# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LifeScan Global Corporation, *et al.*,[1] | ) | Case No. 25-90259 (ARP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF LIFESCAN GLOBAL CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (TECHNICAL MODIFICATIONS)

PORTER HEDGES LLP
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
Grecia V. Sarda (TX Bar No. 24132092)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:     (713) 226-6000
Facsimile:     (713) 226-6248
Email:     jhiggins@porterhedges.com
         sjohnson@porterhedges.com
         myoung-john@porterhedges.com
         jkeefe@porterhedges.com
         gsarda@porterhedges.com

*Co-Counsel to the Debtor*

MILBANK LLP
Dennis F. Dunne (admitted *pro hac vice*)
Samuel Khalil (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219
Email: ddunne@milbank.com
         skhalil@milbank.com
         jfedell@milbank.com
-and-
Andrew M. Leblanc (admitted *pro hac vice*)
Melanie Yanez (admitted *pro hac vice*)
1101 New York Avenue NW
Washington DC 20005
Telephone:     (202) 835-7500
Facsimile:     (202) 263-7586
Email: aleblanc@milbank.com
         mwyanez@milbank.com

*Co-Counsel to the Debtors*

*s*Dated: October 20, 2025

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: LifeScan Global Corporation (1872); DUV Holding Corp. (2522); DUV Intermediate Holding Corp. (2645); LifeScan Texas LLC (1307); DUV Intermediate Holding II Corp. (4829); LifeScan Inc. (8188); LifeScan IP Holdings, LLC (7450); LifeScan China, LLC (N/A) and LifeScan Institute LLC (8188). The location of Debtor LifeScan Global Corporation's principal place of business and the Debtors' service address in these Chapter 11 cases is 75 Valley Stream Parkway, Suite 201, Malvern, PA 19355.

## TABLE OF CONTENTS

<b>Page</b>

INTRODUCTION .................................................................................................................... 7

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
     OF TIME, GOVERNING LAW, AND OTHER REFERENCES ......................... 7

   A.    Defined Terms .................................................................................................. 7

   B.    Rules of Interpretation; Computation of Time ..................................................... 26

   C.    Governing Law ................................................................................................ 27

   D.    Reference to Monetary Figures ......................................................................... 27

   E.    Reference to the Debtors or the Reorganized Debtors .......................................... 27

   F.    Consent and Consultation Rights ...................................................................... 27

   G.    Controlling Document ...................................................................................... 28

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS ................................................... 28

   A.    Administrative Expense Claims ........................................................................ 28

   B.    Professional Fee Claims .................................................................................. 29

        1.    Professional Fee Claims ................................................................. 29

        2.    Professional Fee Escrow Account .................................................... 30

        3.    Professional Fee Reserve Amount .................................................... 30

        4.    Post-Confirmation Date Fees and Expenses ...................................... 30

   C.    Priority Tax Claims ......................................................................................... 30

   D.    Restructuring Expenses .................................................................................... 31

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
     INTERESTS .................................................................................................. 31

   A.    Classification of Claims and Interests ................................................................ 31

        1.    General Terms ............................................................................... 31

        2.    Acceptance/Rejection of the Plan .................................................... 32

        3.    The Classes Under the Plan and Their Voting Rights ......................... 32

   B.    Treatment of Classes of Claims and Interests ..................................................... 32

        1.    Class 1 — Other Secured Claims .................................................... 33

        2.    Class 2 — Other Priority Claims .................................................... 33

        3.    Class 3 — First Lien Term Loan Claims .......................................... 33

        4.    Class 4 — Second Lien Term Loan Claims ....................................... 35

        5.    Class 5 — Third Lien Term Loan Claims ......................................... 35

        6.    Class 6 — General Unsecured Claims .............................................. 36

7.     Class 7 —Intercompany Claims and Intercompany Interests ............................. 36

8.     Class 8 — Existing Equity Interests ................................................. 36

C.    Special Provision Governing Unimpaired Claims ................................................. 36

D.    Elimination of Vacant Classes .................................................................................... 37

E.    No Waiver ........................................................................................................................ 37

F.    Voting Classes; Presumed Acceptance by Non-Voting Classes ......................... 37

G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
      Bankruptcy Code ........................................................................................................... 37

H.    Controversy Concerning Impairment ....................................................................... 38

I.    Subordinated Claims .................................................................................................... 38

ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN ................................ 38

A.    General Settlement of Claims and Interests ............................................................ 38

B.    Restructuring Transactions ........................................................................................ 38

C.    Section 1146(a) Exemption ......................................................................................... 39

D.    Employee and Retiree Benefits ................................................................................. 40

E.    Sources of Consideration for Plan Distributions ................................................... 40

      1.     BidCo Equity .................................................................................................... 41

      2.     New Revolving Facility and the New First Lien Term Loan Facility ......... 42

F.    Corporate Action ........................................................................................................... 43

G.    Corporate Existence ...................................................................................................... 43

H.    Vesting of Assets in the Reorganized Debtors ....................................................... 43

I.    Cancellation of Prepetition Credit Agreements, Notes, Instruments,
      Certificates, and Other Documents ........................................................................... 44

J.    Effectuating Documents; Further Transactions ...................................................... 45

K.    Preservation of Causes of Action .............................................................................. 45

L.    Management Incentive Plan ........................................................................................ 46

M.    Directors and Officers of the Reorganized Debtors. ............................................. 46

N.    Wind-Down Officer ....................................................................................................... 46

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
      LEASES ............................................................................................................................. 51

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .......... 51

B.    Indemnification Obligations ....................................................................................... 52

C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ............ 53

D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ......... 53

E.    Insurance Policies ......................................................................................................... 54

F.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ................................................................................................55
G.      Reservation of Rights ................................................................................55
H.      Nonoccurrence of Effective Date ..............................................................55
I.      Contracts and Leases Entered into after the Petition Date .......................55

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ..................................................56
A.      The Distribution Agent and Servicers .......................................................56
        1.      Powers and Roles...........................................................................56
        2.      Expenses ........................................................................................56
B.      Delivery Procedures ..................................................................................56
        1.      Record Date ...................................................................................56
        2.      Interim Distribution Date ..............................................................57
        3.      Undeliverable and Unclaimed Distributions..................................57
C.      Calculation ................................................................................................58
        1.      Full Amount Payable .....................................................................58
        2.      Foreign Currency Exchange Rate ..................................................58
        3.      Distributions on Account of Obligations of Multiple Debtors............58
        4.      No Postpetition Interest..................................................................59
        5.      Allocation Between Principal and Accrued Interest .......................59
        6.      Single Satisfaction of Claims.........................................................59
        7.      Setoffs ............................................................................................59
        8.      Minimum Distributions..................................................................60
D.      Special Rules for Distributions to Holders of Disputed Claims and
        Interests......................................................................................................60
E.      Compliance Matters...................................................................................60
F.      Claims Paid or Payable by Third Parties ..................................................61
        1.      Claims Paid by Third Parties .........................................................61
        2.      Claims Payable by Insurance Carriers ...........................................61
        3.      Applicability of Insurance Policies ................................................61

ARTICLE VII **Error! Bookmark not defined.**
PROCEDURES FOR RESOLVING DISPUTED CLAIMS ...........................................................62
A.      Allowance of Claims and Interests, Generally .........................................62
B.      Contingent and Unliquidated Claims ........................................................62
C.      Amendments...............................................................................................63
D.      Claims Subject to Avoidance Actions .......................................................63

E. Objections to Claims ......................................................................................63

F. Disallowance of Claims ..................................................................................64

G. No Distributions Pending Allowance ............................................................64

H. Distributions after Allowance ........................................................................65

ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN ........................................65

A. Discharge of Claims and Termination of Interests .......................................65

B. Release of Liens ..............................................................................................65

C. Releases by Debtors .......................................................................................66

D. Releases by Releasing Parties ........................................................................67

E. Exculpation ....................................................................................................68

F. Injunction .......................................................................................................69

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................70

A. Conditions Precedent to the Effective Date ..................................................70

B. Waiver of Conditions Precedent ....................................................................71

ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........72

A. Modification of Plan .......................................................................................72

B. Effect of Confirmation on Modifications ......................................................72

C. Withdrawal of Plan ........................................................................................73

ARTICLE XI RETENTION OF JURISDICTION ................................................................73

ARTICLE XII MISCELLANEOUS PROVISIONS ..............................................................75

A. Immediate Binding Effect ..............................................................................75

B. Additional Documents ...................................................................................75

C. Statutory Committee and Cessation of Fee and Expense Payment. ..............76

D. Payment of Statutory Fees .............................................................................76

E. Reservation of Rights .....................................................................................76

F. Successors and Assigns ..................................................................................76

G. Service of Documents ....................................................................................76

H. Term of Injunctions or Stays .........................................................................78

I. Entire Agreement ...........................................................................................78

J. Plan Supplement .............................................................................................78

K. Non-Severability ............................................................................................78

L. Votes Solicited in Good Faith ........................................................................79

M. Closing of Chapter 11 Cases .........................................................................79

N. Waiver or Estoppel ........................................................................................79

O.      2002 Notice Parties.................................................................................................79

## INTRODUCTION

LifeScan Global Corporation and its affiliated debtors, as debtors-in-possession in the above-captioned chapter 11 cases (each, a "Debtor" and, collectively, the "Debtors"), propose this joint plan of reorganization (the "Plan") for the resolution of outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. The Debtors seek to consummate the Restructuring Transactions on the Effective Date. Each of the Debtors are a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, financial projections, risk factors, a summary and analysis of the Plan, the Restructuring Transactions, and certain related matters.

The Plan is a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

**ALL HOLDERS OF CLAIMS AND INTERESTS, PARTICULARLY THOSE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.**

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

### A.     Defined Terms

1.      "*1L TL Equitization Pool*" has the meaning set forth in Article III.B.3.

2.      "*Ad Hoc Group*" means that certain ad hoc group of holders of, or investment advisors, sub-advisors, or managers of discretionary accounts of funds that hold, First Lien Term Loans and Second Lien Term Loans represented by the Ad Hoc Group Advisors.

3.      "*Ad Hoc Group Advisors*" means Davis Polk & Wardwell LLP, Houlihan Lokey Inc., Norton Rose Fulbright US LLP, and any other special or local counsel or advisor retained by the Ad Hoc Group.

4.      "*Ad Hoc Group Fees and Expenses*" means all reasonable and documented fees and expenses of the Ad Hoc Group Advisors (including the outstanding reasonable fees and expenses of the Ad Hoc Group Advisors accrued since the inception of their respective engagements) related to the negotiation, implementation or consummation of the Plan, Restructuring Support Agreement, or the Restructuring, in each case solely to the extent payable in accordance with the terms of the applicable fee or engagement letter agreement between such firms and one or more of the Company Entities.

5.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Expense Claims, which: (a) with respect to Administrative Expense

Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

6.  "*Administrative Expense Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority under sections 327, 328, 330, 365, 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses, (ii) Allowed Professional Fee Claims, and (iii) the Restructuring Expenses.

7.  "*Advisory Agreement*" means the agreement between BidCo and the Sponsor entered into on the Effective Date, pursuant to which the Sponsor agrees to make its representatives available to the BidCo upon the BidCo's reasonable request to, among other things, assist and provide advice with respect to strategic initiatives and transition and operational matters. As consideration for its services under the Advisory Agreement, the Sponsor or its designee shall receive the Advisory Equity and no other consideration. The Advisory Agreement shall have a term of six months from the Effective Date and other terms acceptable to each of the Sponsor and the Required Consenting Lenders.

8.  "*Advisory Equity*" means 2% of the BidCo Equity, subject to dilution by the Management Incentive Plan.

9.  "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

10.  "*Agent*" means each current and predecessor administrative agent, collateral agent, or any similar Entity under any document or instrument relating to the First Lien Term Loans, Second Lien Term Loans, or the Third Lien Term Loans.

11.  "*Allowed*" means, with respect to any Claim (or any portion thereof), except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for payment of an Administrative Expense Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order; provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable

Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Claims Bar Date or a request for payment of an Administrative Expense Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or with the prior written consent of the Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable. Notwithstanding the foregoing, the Reorganized Debtors shall retain all claims and defenses with respect to any Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan. "Allow" and "Allowing" shall have correlative meanings.

12.     "*Assumed and Assigned Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases that are to be assumed and assigned by the Debtors or Reorganized Debtors or assigned to BidCo Buyer, as set forth on the Assumed and Assigned Executory Contracts and Unexpired Leases List or in the Credit Bid Purchase Agreement, as applicable.

13.     "*Assumed and Assigned Executory Contracts and Unexpired Leases List*" means the list of Executory Contracts and Unexpired Leases (with proposed Cure amounts) that will be assumed and assigned by the Debtors or Reorganized Debtors or assigned to BidCo Buyer, which list shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

14.     "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of a Debtor, an Estate, or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable law.

15.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

16.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

17.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

18.     "*BidCo*" means BidCo Parent and its direct and indirect subsidiaries (including BidCo Buyer).

19.     "*BidCo Buyer*" means LFSN BidCo LLC, or another entity formed at the direction of the Consenting Lenders for the purposes of the Credit Bid Transaction, and any other "Buyer" entity under the Credit Bid Purchase Agreement.

20.     "*BidCo Equity*" means the common equity interests in BidCo Parent, which shall consist of existing or newly issued common equity interests, as applicable.

21.    "*BidCo Parent*" means LFSN TopCo LLC, or another entity formed at the direction of the Consenting Lenders for the purposes of the Credit Bid Transaction, which is the direct or indirect owner of 100% of the equity interests of BidCo Buyer.

22.    "*Business Day*" means any day, other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of the state of New York.

23.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

24.    "*Cash Collateral Orders*" means, collectively, the Interim Cash Collateral Order and the Final Cash Collateral Order.

25.    "*Cause of Action*" means any action, Claim, class action, cross-claim, counterclaim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, rights of subrogation, reimbursement, equity interest, guaranty, suit, obligation, liability, debt, damage, judgment, loss, cost, attorneys' fees and expenses, account, defense, remedy, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, asserted or unasserted, accrued or unaccrued, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foresee or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, allowable or disallowable, assertable directly or derivatively, in rem, quasi in rem, in personam or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, in contract or in tort, in law or in equity, or pursuant to any other theory or principle of law. Causes of Action also include (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to Claims or Interests, (iii) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (iv) any claim or defense, including fraud, mistake, duress, or usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (v) any other Avoidance Actions.

26.    "*Claims Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed, other than Administrative Claims or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

27.    "*Certificate*" means any instrument evidencing a Claim or Interest.

28.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

29.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors or any of the Estates.

30. "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, LLC, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

31. "*Claim Objection Deadline*" means the date that is 270 days following the Effective Date, or such later date that is approved by order of the Bankruptcy Court for cause upon motion by the Reorganized Debtors.

32. "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

33. "*Class*" means a class of Claims or Interests as set forth in <u>Article III</u> hereof pursuant to section 1122(a) of the Bankruptcy Code.

34. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

35. "*Combined Hearing*" means the hearing at which the Bankruptcy Court will consider the adequacy of the Disclosure Statement on a final basis and Confirmation of the Plan.

36. "*Combined Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

37. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 122] and as may be reconstituted from time to time.

38. "*Company"* means DUV Holding Corporation and its direct and indirect subsidiaries as set forth in the Restructuring Support Agreement.

39. "*Confirmation*" means entry of the Combined Order on the docket of the Chapter 11 Cases.

40. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

41. "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court, pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider Confirmation of the Plan.

42. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

43. "*Consenting 1L/2L Term Loan Lenders*" has the meaning set forth in the Restructuring Support Agreement.

11

44.     "*Consenting First Lien Term Loan Lenders*" has the meaning set forth in the Restructuring Support Agreement.

45.     "*Consenting Lenders*" has the meaning specified in the Restructuring Support Agreement.

46.     "*Consenting Second Lien Term Loan Lenders*" has the meaning set forth in the Restructuring Support Agreement.

47.     "*Consummation*" means the occurrence of the Effective Date.

48.     "*Covered Entities*" has the meaning ascribed to it in Article VIII.F herein.

49.     "*Covered Matters*" has the meaning ascribed to in Article VIII.F herein.

50.     "*Credit Bid Assumed Liabilities*" means the "Assumed Liabilities" as defined in the Credit Bid Purchase Agreement.

51.     "*Credit Bid Permitted Liens*" means the "Permitted Liens" as defined in the Credit Bid Purchase Agreement.

52.     "*Credit Bid Purchase Agreement*" means that certain Equity and Asset Purchase Agreement by and among the Debtors party thereto and BidCo Buyer filed as Exhibit [●] to the Sale Order, as amended or modified from time to time in accordance with the terms thereof and the consent rights set forth in the Restructuring Support Agreement and the Plan; *provided*, *however*, that the Credit Bid Purchase Agreement may not be amended or modified in a manner that adversely affects the GUC Settlement without the consent of the Committee, not to be unreasonably withheld.

53.     "*Credit Bid Purchased Assets*" means the "Transferred Equity Interests" and the "Transferred Assets" as defined in the Credit Bid Purchase Agreement.

54.     "*Credit Bid Transaction*" means the sale of the Credit Bid Purchased Assets to, and the assumption of Credit Bid Assumed Liabilities by, BidCo Buyer pursuant to the Credit Bid Purchase Agreement.

55.     "*Credit Bid Transaction Closing*" means the "Closing" as defined in the Credit Bid Purchase Agreement.

56.     "*Cure*" or "*Cure Claim*" means a Claim or payment of a Claim (unless waived or modified by the applicable counterparty or settled upon by the parties under an Executory Contract or Unexpired Lease) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

57.     "*Cure Amount*" means, as applicable, the amount of Cash, including an amount of $0.00, or the Distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to Cure a monetary default by the applicable Debtor in accordance with the

terms of an Executory Contract or Unexpired Lease (unless settled, waived, or modified by the applicable counterparty), other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code to allow such Debtor to assume, or to assume and assign to BidCo Buyer, as applicable, such Executory Contract or Unexpired Lease pursuant to section 365 or 1123 of the Bankruptcy Code.

58.     "*Cure/Assumption Objection Deadline*" means the date that is 14 days after Filing of the Assumed and Assigned Executory Contracts and Unexpired Leases List and service of the Cure Notice; provided that if any Executory Contract or Unexpired Lease is added to the Assumed and Assigned Executory Contracts and Unexpired Leases List after the Filing of the initial Assumed and Assigned Executory Contracts and Unexpired Leases List, or an Executory Contract or Unexpired Lease proposed to be assumed or assumed and assigned by the Debtors or Reorganized Debtor, as applicable, is proposed to be assigned to a third party (including BidCo Buyer) after the Filing of the initial Assumed and Assigned Executory Contracts and Unexpired Leases List, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Assumed and Assigned Executory Contracts and Unexpired Leases List with such modification and (b) the date of the scheduled Confirmation Hearing.

59.     "*Cure Notice*" means, with respect to an Executory Contract or Unexpired Lease to be assumed or assumed and assigned under the Plan, a notice that (a) sets forth the proposed Cure Amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed or assumed and assigned under the Plan or assumed and assigned pursuant to the Credit Bid Transaction; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases or to the proposed Cure Amount, including the proposed objection deadline, and for the resolution of any such disputes by the Bankruptcy Court; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract or Unexpired Lease to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

60.     "*Debtor*" or "*Debtors*" has the meaning provided in the preamble of this Plan.

61.     "*Debtor Release*" means the releases by the Debtors set forth in <u>Article VIII.C</u> herein.

62.     "*Definitive Documents*" means the definitive documents and agreements governing the Restructuring Transactions (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by or referenced in the Plan (as amended, modified, or supplemented from time to time), including: (i) the Restructuring Support Agreement (and all exhibits and other documents and instruments related thereto); (ii) the Disclosure Statement and all other Solicitation Materials (including any motion seeking either approval of the Disclosure Statement or combined or conditional approval of the Disclosure Statement and confirmation of the Plan); (iii) the Cash Collateral Orders; (iv) the Disclosure Statement Order; (v) the First Day Pleadings; (vi) the Plan and the Plan Supplement (and all exhibits and other documents and

instruments related thereto and included therein); (v) the Confirmation Order and other pleadings filed by the Debtors in support of entry thereof; (vi) the New Revolving Facility Documents; (vii) the New First Lien Term Loan Facility Documents; (viii) the New ICA; (ix) the New Governance Documents; (x) the MIP Documents; (xi) the Restructuring Steps Plan; (xii) the Advisory Agreement; (xiii) the Credit Bid Purchase Agreement, (xiv) the Wind-Down Budget, (xv) the Transition Services Agreement, (xvi) any agreements, settlements, motions, pleadings, briefs, applications, orders and other Filings with the Bankruptcy Court with respect to the rejection, assumption and/or assumption and assignment of Executory Contracts and/or Unexpired Leases, including, for the avoidance of doubt, the Rebate Agreements Rejection Motion and Rebate Agreements Rejection Order; and (xvii) any other applications, pleadings, briefs, motions, orders, filing, agreements, and other documentation that may be necessary or desirable to consummate or document the Restructuring Transactions (including, if applicable, a tax separation agreement); *provided*, that any monthly or quarterly operating reports, retention applications, fee applications, fee statements, and any declarations in support thereof shall not constitute Definitive Documents.

63.    "*Disclosure Statement*" means the disclosure statement with respect to this Plan, including all exhibits, schedules, supplements, modifications or amendments thereto.

64.    "*Disputed*" means a Claim or an Interest or any portion thereof that is not Allowed or disallowed under the Plan, the Bankruptcy Code, or a Final Order and with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

65.    "*Distribution*" means a distribution made or facilitated by a Distribution Agent pursuant to the Plan.

66.    "*Distribution Agent*" means, as applicable, (a) with respect to distributions to Holders of Allowed General Unsecured Claims, the GUC Trustee or any Entity selected by the Committee or the GUC Trustee in accordance with the GUC Trust Documents, and (b) with respect to all other distributions, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or to facilitate Distributions in accordance with the Plan.

67.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors (with the consent of the Required Consenting Lenders), the Reorganized Debtors, or the GUC Trustee (solely in the case of General Unsecured Claims), on or after the Effective Date, upon which the Distribution Agent shall make Distributions to Holders of Allowed Claims entitled to receive Distributions under the Plan on such date.

68.    "*Distribution Record Date*" means, (a) with respect to General Unsecured Claims, the Effective Date, and (b) with respect to all other Claims, the later of the (i) the Confirmation Date and (ii) ten Business Days prior to the Effective Date, or such other date that is selected by the Debtors with the consent of the Required Consenting Lenders pursuant to a notice filed by the Debtors on the docket of the Chapter 11 Cases.

69.    "*DOF Election*" means an election to treat any portion of the GUC Trust allocable to the Disputed General Unsecured Claims as a "disputed ownership fund" governed by section 1.468B-9 of the Treasury Regulations.

70.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in <u>Article IX.A</u> have been satisfied or waived in accordance with <u>Article IX.B</u>.

71.     "*Election Pool Portion*" has the meaning set forth in <u>Article III.B.3</u>.

72.     "*Election TL Portion*" has the meaning set forth in <u>Article III.B.3</u>.

73.     "*Emergence Excess Cash*" means an amount of Cash equal to the greater of (x) $132.5 million and (y) Liquidity on as of the Credit Bid Transaction Closing in excess of $150 million.

74.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

75.     "*Equitization Election*" has the meaning set forth in <u>Article III.B.3</u>.

76.     "*Equitization Election Term Loan Claims*" means Allowed First Lien Term Loan Claims that are subject to the Equitization Election.

77.     "*Equitizing Holder Institutions*" means Holders of Equitization Election Term Loan Claims, together with their Affiliates that hold Allowed First Lien Term Loan Claims.

78.     "*Estate*" means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

79.     "*Exculpated Party*" means, collectively, and in each case in its capacity as such, and in each case, to the maximum extent permitted by law, (i) the Debtors, (ii) the Committee and the current and former members of the Committee (solely in their capacities as such).

80.     "*Exculpation*" means the exculpation provision set forth in <u>Article VIII.E</u> herein.

81.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

82.     "*Existing Credit Documents*" means the First Lien Credit Agreement, the Second Lien Credit Agreement, and the Third Lien Credit Agreement, including all other ancillary documentation (including any security agreements, intercreditor agreements, exhibits, schedules, supplements, appendixes, annexes, instructions, and attachments thereto) in connection with each of the foregoing.

83.     "*Existing Equity Interests*" means all issued and outstanding Interests in the Parent.

84.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

85.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to a Proof of Claim, with the Claims and Noticing Agent or the Bankruptcy Court.

86.     "*Final Cash Collateral Order*" means the final order governing the Company Entities' use of cash collateral during the Chapter 11 Cases entered at Docket No. 208.

87.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

88.     "*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, modified, amended, dismissed or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if any appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgement shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

89.     "*First Day Orders*" means any interim or Final Order of the Bankruptcy Court granting the relief requested in the First Day Pleadings (as may be amended, supplemented or modified from time to time).

90.     "*First Day Pleadings*" means all of the motions, proposed court orders, and other material documents that the Debtors have Filed upon or around the commencement of the Chapter 11 Cases, including, without limitation, the Rebate Agreements Rejection Motion (as they may be amended, supplemented or modified from time to time).

91.     "*First Lien Credit Agreement*" means that certain First Lien Credit Agreement dated as of May 19, 2023 among DUV Intermediate Holding II Corporation, LifeScan Global Corporation, each of the subsidiary guarantors party thereto, Wilmington Savings Fund Society, FSB, as successor administrative and collateral agent to Bank of America, N.A. as predecessor administrative and collateral agent, and the lenders party thereto (as amended, modified, extended, restated, amended and restated, replaced, or supplemented from time to time).

92.     "*First Lien Term Loan Agent*" means Wilmington Savings Fund Society, FSB, as successor administrative and collateral agent to Bank of America, N.A., as predecessor administrative and collateral agent, under the First Lien Credit Agreement.

93.     "*First Lien Term Loan Claims*" means any Claims on account of the First Lien Term Loans and any other Claims under the First Lien Credit Agreement that are related to the

First Lien Term Loans. For the avoidance of doubt, Revolving Loan Claims are not related to, are entirely distinct from, and do not constitute First Lien Term Loan Claims.

94.     "*First Lien Term Loans*" means the term loans issued under the First Lien Credit Agreement.

95.     "*General Unsecured Claim*" means any Claim that is not an Administrative Expense Claim, Other Secured Claim, Other Priority Claim, First Lien Term Loan Claim, Second Lien Term Loan Claim, Third Lien Term Loan Claim, Intercompany Claim or any other Claim that is Secured, subordinated, post-petition in nature, or entitled to priority under the Bankruptcy Code. For the avoidance of doubt, General Unsecured Claims shall include any Claims arising under or related to the Specified Agreements.

96.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

97.     "*GUC Cash Pool*" means $60 million in Cash.

98.     "*GUC Commercial Tort Claim Share*" means the right of the GUC Trust to receive, in the aggregate, 50% of the first $10 million of the net Cash proceeds (after the payment of legal fees and other amounts and expenses to be agreed in the Definitive Documents), if any, whether by judgment, adjudication, resolution, stipulation or settlement, that BidCo receives in respect of the New Jersey Action. For the avoidance of doubt, the GUC Commercial Tort Claim Share shall not exceed $5 million in the aggregate.

99.     "*GUC Settlement*" means the global settlement between the Debtors, the Committee, the Ad Hoc Group, and the Sponsor regarding, among other things, (a) the treatment of Allowed General Unsecured Claims under the Plan (including, without limitation, the GUC Cash Pool and the GUC Commercial Tort Claim Share), the establishment of the GUC Trust and the execution, delivery and implementation of all Definitive Documents related thereto, including the provisions of this Plan and the GUC Trust Documents reasonably necessary or advisable to give effect to and implement the global settlement, and the releases under the Plan of the Consenting Lenders, the Sponsor and their Related Parties.

100.     "*GUC Trust*" means one or more trusts and/or sub-trusts to be formed on or prior to the Effective Date pursuant to the GUC Trust Agreement, which trust(s) shall hold the GUC Trust Assets.

101.     "*GUC Trust Agreement*" means the trust or similar agreement, between the GUC Trustee, in its capacity as such, the Debtors, the Reorganized Debtors and BidCo, providing for, among other things, the establishment of the GUC Trust and the powers and responsibilities of the GUC Trustee, in form and substance reasonably acceptable to the Committee, the Debtors and the Required Consenting Lenders.

102.     "*GUC Trust Assets*" means (a) the GUC Cash Pool, (b) the GUC Commercial Tort Claim Share and the proceeds thereof, and (c) any other assets that may be transferred to or held in the GUC Trust from time to time.

103. "*GUC Trust Documents*" means the GUC Trust Agreement and all other agreements, documents, procedures, and instruments delivered or entered into in connection with the establishment, formation, and implementation of the GUC Trust, each in form and substance acceptable to the Committee and reasonably acceptable to the Debtors and the Required Consenting Lenders.

104. "*GUC Trust Interests*" means all beneficial interests in the GUC Trust distributed to each Holder of an Allowed General Unsecured Claim under the Plan, which shall entitle such Holder to a *pro rata* share in the GUC Trust Assets or the proceeds thereof.

105. "*GUC Trustee*" means the trustee for the GUC Trust to be selected by the Committee on or prior to the Effective Date, which Person (and any successor GUC Trustee) shall be a "U.S. Person" as determined for U.S. federal income tax purposes.

106. "*Holder*" means any Entity that is the record or beneficial owner of any Claim or Interest, including any nominees, investment managers, investment advisors, sub-advisors, or managers of funds or discretionary accounts that hold, or trustees of trusts that hold, any Claim or Interest.

107. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

108. "*Interim Cash Collateral Order*" means the interim order governing the Company Entities' use of cash collateral during the Chapter 11 Cases entered at Docket No. 48.

109. "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, indemnification agreements, employment agreements, engagement letters, or other contracts, for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors', officers', managers', employees', attorneys', other professionals', and agents' respective Affiliates.

110. "*Insurance Policies*" means all insurance policies issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, letters of indemnity, or instruments relating thereto.

111. "*Insurer*" means any company or other Entity that has issued or entered into an Insurance Policy, any third-party administrator, and any respective predecessors or affiliates thereof.

112. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

113. "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

114. "*Interest*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, including, without limitation, options, warrants, rights, or other securities or agreements to acquire the common stock,

preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

115.    "*IRS*" means the Internal Revenue Service.

116.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

117.    "*Lender Representative*" means a representative of the Required Consenting Lenders (who shall be a Person reasonably acceptable to the Debtors) that will receive information designed to provide an education about the Company's business, including the Company's market and business dynamics, whose fee and expense reimbursement terms shall be subject to negotiation with the Company, as provided in the Restructuring Support Agreement.

118.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

119.    "*Liquidation Recovery*" means the consideration sufficient to satisfy section 1129(b)(2)(b) of the Bankruptcy Code (which, for the avoidance of doubt, may be no consideration).

120.    "*Liquidity*" means (i) balance sheet Cash (net of all other payments to be made (including to fund reserves) in connection with the Restructuring Transactions) of the Debtors as of immediately prior to the Credit Bid Transaction Closing and BidCo immediately after the Credit Bid Transaction Closing, plus (ii) availability to BidCo under the New Revolving Facility up to $50 million as of the Credit Bid Transaction Closing.

121.    "*Management Incentive Plan*" means the BidCo's management incentive compensation program to be implemented by the New Board after the Effective Date.

122.    "*MIP Documents*" means the documentation effectuating the Management Incentive Plan.

123.    "*New Board*" means the board of directors, managers or equivalent (as applicable) of the BidCo Parent.

124.    "*New First Lien Term Loans*" means the term loans issued under the New First Lien Term Loan Facility.

125.    "*New First Lien Term Loan Facility*" means the new second-out first lien or first lien term loan facility through which the New First Lien Term Loans will be issued and secured on account of the First Lien Term Loan Claims.

126.    "*New First Lien Term Loan Facility Documents*" means the credit agreement, security agreement and any other ancillary document governing or related to the New First Lien Term Loan Facility to be entered into by BidCo Buyer and the other parties thereto.

127. "*New Governance Documents*" means the new or amended, as applicable, organizational and governance documents of the BidCo Parent and any other BidCo entity.

128. "*New ICA*" means, if necessary, the new intercreditor agreement(s) governing the relative lien and payment priorities among the New Revolving Facility and the New First Lien Term Loan Facility.

129. "*New Jersey Action*" means *LifeScan, Inc. v. Jeffrey C. Smith et. al.*, Case Number 17-5552 (United Stated District Court for the District of New Jersey). For the avoidance of doubt, all of the Debtors' rights and interests in the New Jersey Action constitute a "Credit Bid Purchased Asset" and shall be transferred to BidCo Buyer pursuant to the Credit Bid Purchase Agreement, but subject to the terms of the GUC Settlement and the right of the GUC Trust to receive the GUC Commercial Tort Claim Share for the benefit of Holders of Allowed General Unsecured Claims.

130. "*New Revolving Facility*" means the new first-out first lien cash flow revolving credit facility or asset-based lending facility, as applicable, to be entered into by the BidCo Buyer and other parties thereto.

131. "*New Revolving Facility Documents*" means the credit agreement, security agreement and any other ancillary document governing or related to the New Revolving Facility to be entered into by BidCo Buyer and the other parties thereto.

132. "*Other Priority Claim*" means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

133. "*Other Secured Claim*" means a Secured Claim other than a Priority Tax Claim, a First Lien Term Loan Claim, a Second Lien Term Loan Claim, or a Third Lien Term Loan Claim.

134. "*Parent*" means DUV Holding Corporation.

135. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

136. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

137. "*Plan*" means this chapter 11 plan, as altered, amended, modified, or supplemented from time to time in accordance with the terms herein, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

138. "*Plan Supplement*" means any supplemental appendix to the Plan, containing certain documents (including the GUC Trust Documents) and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified or supplemented from time to time in accordance with the terms of the Plan, the Restructuring Support Agreement, the Bankruptcy Code, and the Bankruptcy Rules.

139. "*Post-Sweep Excess Cash*" has the meaning set forth in Article III.B.3.

140.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind entitled to priority of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

141.    "*Pro rata*" means, with respect to a Claim, unless otherwise specified, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

142.    "*Professional*" means an Entity: (a) employed by the Debtors or the Committee in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

143.    "*Professional Fee Claim*" means any Administrative Expense Claim for compensation of Professionals and reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

144.    "*Professional Fee Escrow Account*" means an account, which may be interest-bearing, funded by the Debtors on or prior to the Effective Date in an amount equal to the Professional Fee Reserve Amount.

145.    "*Professional Fee Reserve Amount*" means the total amount of unpaid compensation and unreimbursed expenses incurred by Professionals from the Petition Date through and including the Effective Date (as applicable), in each case as estimated in good faith by the applicable Professional, which estimates Professionals shall deliver to the Debtors as set forth in <u>Article II.B</u> of the Plan.

146.    "*Proof of Claim*" means a proof of Claim against any of the Debtors Filed in the Chapter 11 Cases.

147.    "*Rebate Agreements*" means any rebate agreement between any Debtor or a subsidiary thereof and any pharmacy benefit manager, Medicare agency or state Medicaid agency (or otherwise) entered into prior to the Petition Date.

148.    "*Rebate Agreements Rejection Motion*" means a motion seeking entry of an order of the Bankruptcy Court rejecting the Rebate Agreements and the Specified Agreements effective as of the Petition Date.

149.    "*Rebate Agreements Rejection Orders*" means (i) the *Order (I) Authorizing (I) Rejection of Certain Executory Contracts and (II) Granting Related Relief* [ECF No. 225] and (ii) the *Order (I) Authorizing (I) Rejection of Certain Executory Contracts and (II) Granting Related Relief* [ECF No. 304].

150.   "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim or an Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code.

151.   "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

152.   "*Related Parties*" means, with respect to any Entity, and in each case in its capacity as such, such Entity's current and former Affiliates and such Entity's and its current and former Affiliate's direct and indirect current and former directors, managers, officers, committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, direct and indirect parent Entities, "controlling persons" (within the meaning of the federal securities laws), participants, partners, limited partners, general partners, subsidiaries, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), management companies, fund advisors, investment bankers, actuaries, consultants, representatives, and other professionals, and such person's or Entity's predecessors, successors, assigns, heirs, executors, estates, and nominees; *provided* that only those Persons who any such Entity (i) has legal authority to bind, (ii) who may assert liability on behalf of or through such Entity, or (iii) who are co-liable with, or derivatively liable on account of, such Entity shall be considered a "Related Party" of such Entity.

153.   "*Released Parties*" means, collectively, and in each case solely in their respective capacity as such, (i) each Debtor, (ii) each Reorganized Debtor, (iii) the Sponsor, (iv) the Consenting Lenders, (v) the Agents, (vi) BidCo, (vii) the Committee and its members (in their capacities as such and not in their individual capacities), (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), such Entities' Related Parties; (ix) all Holders of Claims or Interests who were given notice of the opportunity to opt out of the releases set forth in the Plan but did not affirmatively opt out and thereby provided a release; *provided*, that any Entity that (a) elects to opt out of the releases contained in Article VIII.D; or (y) timely Files with the Bankruptcy Court an objection to the Plan that is not resolved before Confirmation shall not be a "Released Party."

154.   "*Releasing Parties*" means, collectively, and in each case solely in their respective capacity as such, (i) the Sponsor, (ii) the Consenting Lenders, (iii) the Agents, (iv) BidCo, (v) the Committee and its members (in their capacities as such and not in their individual capacities), (vi) with respect to each of the foregoing Entities in clauses (i) through (v), such Entities' Related Parties, and (vii) all Holders of Claims or Interests who were given notice of the opportunity to opt out of the releases set forth in the Plan but did not affirmatively opt out; *provided*, any Entity that (x) elects to opt out of the release contained in Article VIII.D; or (y) timely Files with the Bankruptcy Court an objection to the Plan that is not resolved before Confirmation shall not be a "Releasing Party."

155.    "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto by merger, amalgamation, consolidation, or otherwise, after giving effect to the Credit Bid Sale Transaction, on and after the Effective Date; *provided* that, BidCo is not a Reorganized Debtor.

156.    "*Required Consenting First Lien Term Loan Lenders*" means, as of the relevant date, the Consenting Lenders holding greater than 50% of the aggregate outstanding principal amount of the First Lien Term Loans that are then held by all Consenting First Lien Term Loan Lenders in the aggregate.

157.    "*Required Consenting Lenders*" means, (i) the Required Consenting First Lien Term Loan Lenders and (ii) the Required Consenting Second Lien Term Loan Lenders.

158.    "*Required Consenting Second Lien Term Loan Lenders*" means, as of the relevant date, the Consenting Lenders holding greater than 50% of the aggregate outstanding principal amount of the Second Lien Term Loans that are then held by all Consenting Second Lien Term Loan Lenders in the aggregate.

159.    "*Restructuring Expenses*" means the Ad Hoc Group Fees and Expenses and the reasonable and documented fees and expenses of (i) the Sponsor, provided, that such fees shall only be reasonable and documented legal fees and shall only be payable up to $1 million; (ii) the Lender Representative, (iii) the First Lien Term Loan Agent, (iv) the Second Lin Term Loan Agent and (v) the Specified Third Lien Parties in an aggregate amount not to exceed the Third Lien Restructuring Expenses Amount.

160.    "*Restructuring Steps Plan*" means that certain memorandum describing the steps to be carried out to effectuate the Restructuring Transactions (other than the GUC Settlement) in accordance with the Plan (to be included in the Plan Supplement).

161.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement by and among the Company, the Consenting Lenders, and the other signatories thereto, including all exhibits and attachments thereto, as may be further amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof.

162.    "*Restructuring Term Sheet*" means the Restructuring Term Sheet attached as Exhibit A to the Restructuring Support Agreement.

163.    "*Restructuring Transactions*" means the mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, formations, dissolutions or other corporate transactions described in, approved by, contemplated by, or undertaken to implement the Plan, the GUC Settlement and the Credit Bid Transaction, including those transactions described in Article IV.B.

164.    "*Revolving Loan Claims*" means Claims on account of the Revolving Loans and any other Claims under the First Lien Credit Agreement that are related to the Revolving Loans.

165.    "*Revolving Loans*" means the revolving loans issued under the First Lien Credit Agreement.

166.    "*Sale Order*" means the order of the Bankruptcy Court approving the Credit Bid Transaction pursuant to section 363 of the Bankruptcy Code, which may be the Confirmation Order.

167.    "*Schedules*" means, collectively, the schedules of assets and liabilities, statements of financial affairs, lists of Holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court.

168.    "*Schedule of Retained Causes of Action*" means the schedule of Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

169.    "*Scheduling Order*" means the order of the Bankruptcy Court setting the Combined Hearing and approving the solicitation procedures with respect to the Solicitation Materials.

170.    "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement dated as of May 19, 2023, among DUV Intermediate Holding II Corporation, LifeScan Global Corporation, each of the subsidiary guarantors party thereto, Wilmington Savings Fund Society, FSB, as successor administrative and collateral agent, and the lenders party thereto (as amended, modified, extended, restated, amended and restated, replaced, or supplemented from time to time).

171.    "*Second Lien Term Loan Agent*" means Wilmington Savings Fund Society, FSB, as successor administrative and collateral agent under the Second Lien Credit Agreement.

172.    "*Second Lien Term Loan Claims*" means any Claims on account of the Second Lien Term Loans and any other Claims arising under the Second Lien Credit Agreement.

173.    "*Second Lien Term Loans*" means the term loans issued under the Second Lien Credit Agreement.

174.    "*Secured Claim*" means a Claim or any portion of a Claim that is: (i) secured by a Lien on any property of a Debtor to the extent of the value of such Debtor's interest in such property as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the applicable Debtor, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the right of setoff in accordance with section 553 of the Bankruptcy Code.

175.    "*Securities Act*" means the U.S. Securities Act of 1933, as amended.

176.    "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

177.    "*Servicer*" means any Person or Entity that has been empowered to act in the capacity of the Distribution Agent with respect to a particular Class of Claims, including an administrative agent, an indenture trustee, or a collateral agent.

178.    "*Solicitation Materials*" means the Disclosure Statement, the Plan, any ballots, documents, forms, and all other materials approved by the Bankruptcy Court for distribution in connection with the solicitation of votes on the Plan pursuant to sections 1125 and 1125 of the

Bankruptcy Code, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

179. "*Specified Agreements*" means the certain rebate or other agreements with pharmacy benefits managers and state governments that were rejected pursuant to the Rebate Agreement Rejection Orders.

180. "*Specified Third Lien Parties*" means (i) Ellington Management Group, in its capacity as the manager of certain holders of Third Lien Term Loan Claims and (ii) Ankura Trust Company, LLC, in its capacity as Agent under the Third Lien Credit Agreement.

181. "*Sponsor*" means PE LifeScan Holdings, LLC.

182. "*Tax Code*" means the Internal Revenue Code of 1986, as amended.

183. "*Third Lien Credit Agreement*" means that certain First Lien Credit Agreement dated as of October 1, 2018, among DUV Intermediate Holding II Corporation, LifeScan Global Corporation, each of the subsidiary guarantors party thereto, Ankura Trust Company, LLC, and the lenders party thereto (as amended, modified, extended, restated, amended and restated, replaced, or supplemented from time to time) that was subordinated in priority in connection with the Company's exchange offer transaction consummated pursuant to the Transaction Support Agreement dated as of April 20, 2023.

184. "*Third Lien Restructuring Expenses Amount*" means $500,000.

185. "*Third Lien Term Loan Claims*" means any Claims on account of the Third Lien Term Loans and any other Claims arising under the Third Lien Credit Agreement.

186. "*Third Lien Term Loans*" means the term loans issued under the Third Lien Credit Agreement.

187. "*Third-Party Releases*" means the releases by Holders of Claims and Interests set forth in Article VIII.D herein.

188. "*Transition Services Agreement*" means the TSA(s) as defined in the Credit Bid Purchase Agreement.

189. "*Treasury Regulations*" means the U.S. Treasury Regulations promulgated under the Tax Code.

190. "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

191. "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

192. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code,

including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

193. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

194. "*Wind-Down Budget*" means a budget attached as Exhibit E to the Credit Bid Purchase Agreement, a version of which shall be filed with the Bankruptcy Court prior to the Confirmation Hearing.

195. "*Wind-Down Officer*" means the Person selected by the Debtors (with the consent of the Required Consenting Lenders) on or prior to the Effective Date to administer each Reorganized Debtor following the Effective Date or such successor as may be selected by the Reorganized Debtors.

196. "*Wind-Down Reserve*" means a reserve to be funded prior to the Effective Date to fund all administrative costs (including related reasonable advisor costs of the Reorganized Debtors) associated with dissolving applicable Debtors and otherwise winding down the Estates as set forth in the Wind-Down Budget, in an amount to be agreed by the Debtors and the Required Consenting Lenders. For the avoidance of doubt, the Professional Fee Escrow Accounts shall not be included in the Wind Down Reserve and shall not be the property of the Estates but rather shall be held for the exclusive benefit of the Professionals.

## B.   Rules of Interpretation; Computation of Time

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, where a document or agreement referred to in this Plan is terminated on or before the Effective Date, a reference to such document or agreement shall be a reference to the document or agreement as it stood immediately prior to its termination; (e) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (f) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (j) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (k) all references to statutes, regulations,

orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (l) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; *provided*, *however*, that no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## C.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of laws thereunder, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan; *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

## D.      Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## E.      Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors to the extent the context requires.

## F.      Consent and Consultation Rights

Notwithstanding anything in this Plan, the Disclosure Statement, the Disclosure Statement Order, or the Confirmation Order to the contrary, any and all consent, consultation, and approval rights of the parties to the Restructuring Support Agreement set forth therein with respect to the form and substance of this Plan, any Definitive Document, all exhibits to the Plan, the Disclosure Statement, and the Plan Supplement, or any other document with respect to the implementation of the Plan and the Restructuring Transactions, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, are incorporated herein by this reference (including with respect to the applicable definitions in Article IA) and shall be fully enforceable as if stated in full herein.  Failure to reference in this Plan the rights or obligations referred to in the immediately preceding sentence as they relate to any document referenced in the

Restructuring Support Agreement, shall not impair such rights and obligations. In case of a conflict between the consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement with those parties' consent rights set forth in the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order, the consent rights in the Restructuring Support Agreement shall control.

## G.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and a document Filed as part of the Plan Supplement, the terms of the document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or the Confirmation Order). In the event of any inconsistency between the Plan, the Plan Supplement or the Disclosure Statement, on one hand, and the Confirmation Order on the other hand, the Confirmation Order shall control.  In the event of an inconsistency between the Plan and the Credit Bid Purchase Agreement, the Credit Bid Purchase Agreement shall control; *provided*, *however*, that, in the event of any inconsistency between the Plan and the Credit Bid Purchase Agreement with respect to any provisions regarding the terms of the GUC Settlement or necessary to implement the terms of the GUC Settlement (including the treatment of General Unsecured Claims and the GUC Trust), the Plan shall control. In the event of any inconsistency between the Plan and the GUC Trust Agreement, the GUC Trust Agreement shall control.

**ARTICLE II**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

## A.    Administrative Expense Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Expense Claim and the Debtors (with the consent of the Required Consenting Lenders), the Reorganized Debtors or BidCo (to the extent such Claim constitutes a Credit Bid Assumed Liability), as applicable, each Holder of an Allowed Administrative Expense Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) shall receive in full and final satisfaction of its Allowed Administrative Expense Claim an amount of Cash equal to the amount of such Allowed Administrative Expense Claim in accordance with the following: (a) if an Administrative Expense Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Expense Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business, after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative

Expense Claim without any further action by the Holders of such Allowed Administrative Expense Claim or compliance with the procedures set forth in the immediately following paragraph; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors, the Reorganized Debtors or BidCo (to the extent such Claim constitutes a Credit Bid Assumed Liability), as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided* that, for the avoidance of doubt, no Allowed Administrative Expense Claim shall be asserted against, or an obligation of, BidCo unless such Allowed Administrative Expense Claim constitutes a Credit Bid Assumed Liability.

Except as otherwise provided in this Article II.A, and except with respect to Administrative Expense Claims that are Professional Fee Claims, requests for payment of Administrative Expense Claims must be Filed with the Bankruptcy Court and served on the Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Expense Claims Bar Date. Holders of Administrative Expense Claims that are required to, but do not, File and serve a request for payment of such Administrative Expense Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Estates, the Reorganized Debtors, or their respective property, and such Administrative Expense Claims shall be deemed disallowed and discharged as of the Effective Date. Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors or Reorganized Debtors, as applicable, and the requesting party no later than 60 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with the Bankruptcy Court with respect to an Administrative Expense Claim previously Allowed.

**B.      Professional Fee Claims**

1.      Professional Fee Claims

All applications for final allowance of Professional Fee Claims must be Filed and served on the Reorganized Debtors and such other Entities who are designated in the Confirmation Order no later than forty-five (45) days after the Effective Date. The Professional Fee Claims owed to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account after such Claims are Allowed by a Final Order. After all Allowed Professional Fee Claims have been paid in full, any excess amounts remaining in the Professional Fee Escrow Account shall be returned to BidCo. To the extent that the funds held in the Professional Fee Escrow Account are unable to satisfy the amount of Allowed Professional Fee Claims owed to the Professionals, the Reorganized Debtors shall pay such amounts within ten (10) Business Days of entry of the order approving such Professional Fee Claims.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting Professional by no later than twenty-one (21) days after the Filing of the applicable final application for payment of the Professional Fee Claim. Each Holder of an Allowed Professional Fee Claim shall be paid in full in Cash by the Reorganized Debtors, including from the Professional Fee Escrow Account, within five (5) Business Days after entry of the order approving such Allowed Professional Fee Claim. The Reorganized Debtors shall not commingle any funds contained in the Professional Fee Escrow Account and shall use such funds to pay only the Professional Fee Claims, as and when Allowed by order of the Bankruptcy Court.

Notwithstanding anything to the contrary contained in this Plan, the failure of the Professional Fee Escrow Account to satisfy in full the Professional Fee Claims shall not, in any way, operate or be construed as a cap or limitation on the amount of Professional Fee Claims due and payable by the Debtors or the Reorganized Debtors.

2.      Professional Fee Escrow Account

On or prior to the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall not be considered property of the Debtors, the Estates, the Reorganized Debtors, Bidco, or any of their respective Affiliates, and no Liens, claims, encumbrances, or interests will encumber the Professional Fee Escrow or the funds held in the Professional Fee Escrow in any way.

3.      Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate in good faith their Professional Fee Claims (taking into account any retainers) prior to and as of the Confirmation Date and shall deliver such estimate to the Debtors at least three (3) calendar days prior to the Effective Date. If a Professional does not provide such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; provided that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional. The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

4.      Post-Confirmation Date Fees and Expenses

Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. Each Debtor, as applicable, may employ and pay any post-Confirmation Date fees and expenses of any Professional retained by the Debtors or the Committee in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court, including with respect to any transaction, reorganization, or success fees payable by virtue of Consummation of this Plan.

**C.      <u>Priority Tax Claims</u>**

Unless otherwise agreed to by the Holder of an Allowed Priority Tax Claim and the Debtors, the Reorganized Debtors or BidCo (to the extent such Claim constitutes a Credit Bid Assumed Liability), as applicable, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on their Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**D.**     **Restructuring Expenses**

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date (or, with respect to necessary post-Effective Date activities, after the Effective Date), shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the orders of the Bankruptcy Court, engagement letters, and Restructuring Term Sheet, as applicable, without any requirement (i) to File a fee application with the Bankruptcy Court, (ii) for Bankruptcy Court review or approval, and/or (iii) submission to any party of itemized time detail. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; provided, however, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. From and after the Petition Date, the Debtors and the Reorganized Debtors (as applicable) shall pay, when due and payable pursuant to the Restructuring Term Sheet, and otherwise in the ordinary course, the Restructuring Expenses whether incurred before, on, or after the Effective Date. On or prior to the Effective Date, or as soon as practicable thereafter, final invoices for all Restructuring Expenses incurred prior to and unpaid as of the Effective Date shall be submitted to the Debtors and shall be paid, or caused to be paid, by the Reorganized Debtors within ten (10) Business Days of receipt of the applicable final invoice. Any Restructuring Expenses that constitute Adequate Protection Obligations (as defined in the Cash Collateral Orders) are entitled to all rights and protections of other Adequate Protection Obligations (as defined in the Cash Collateral Orders).

In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay post Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation and defense of the Plan.

## ARTICLE III
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

**A.**     **Classification of Claims and Interests**

1.     General Terms

All Claims and Interests, except for those described in <u>Article II</u>, are classified as set forth in this **Error! Reference source not found.**. A Claim or Interest is classified (i) in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date and (ii) in another Class to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest, as applicable, in that Class. To the extent a specified Class does not include any Allowed Claims or Allowed Interests, as applicable, then such Class shall be eliminated from the Plan for purposes of voting to accept or reject the Plan and shall not be considered in evaluating the Plan's compliance with section 1129(a)(8) of the Bankruptcy Code. If a controversy arises as

to whether any Claims or Interests, or any Classes of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine that controversy on or before the Confirmation Date.

      2.      Acceptance/Rejection of the Plan

Any Class of Claims or Interests that is Unimpaired under the Plan is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan. Likewise, any Class of Claims or Interests that does not entitle the holders of such Claims or Interests to receive or retain any property under the Plan on account of such Claims or Interests is deemed to have rejected the Plan and is therefore not entitled to vote to accept or reject the Plan.

The Plan groups the Debtors together solely for the purpose of describing treatment of Claims and Interests under the Plan, confirmation of the Plan and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal Person, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Persons, or cause the transfer of any assets. Except as otherwise provided by or permitted under the Plan, all Reorganized Debtors shall continue to exist as separate legal Persons after the Effective Date.

      3.      The Classes Under the Plan and Their Voting Rights

Pursuant to section 1122 of the Bankruptcy Code, the classification of Claims and Interests is summarized as follows:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | First Lien Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Second Lien Term Loan Claims | Impaired | Entitled to Vote |
| 5 | Third Lien Term Loan Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims and Intercompany Interests | Unimpaired / Impaired | Presumed to Accept / Deemed to Reject |
| 8 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.**      **Treatment of Classes of Claims and Interests**

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless

otherwise indicated, the Holders of Allowed Claims or Allowed Interests, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.    Class 1 — Other Secured Claims

  (a)    *Classification:* Class 1 consists of any Other Secured Claims against any Debtor.

  (b)    *Treatment:* Except to the extent a Holder agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors, in full and final satisfaction of its Allowed Other Secured Claim: (i) Cash in an amount equal to such Allowed Claim on the later of (a) the Effective Date or as soon as reasonably practicable thereafter and (b) the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim; (ii) reinstatement of its Allowed Other Secured Claim; or (iii) such other treatment so as to render such Allowed Other Secured Claim Unimpaired.

  (c)    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    Class 2 — Other Priority Claims

  (a)    *Classification*: Class 2 consists of any Other Priority Claims against any Debtor.

  (b)    *Treatment*: Except to the extent that a Holder agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of its Allowed Other Priority Claim, (i) Cash in an amount equal to such Allowed Claim, (ii) reinstatement of its Allowed Other Priority Claims or (iii) other treatment consistent with section 1129(a)(9) of the Bankruptcy Code, as to render such Allowed Other Priority Claim Unimpaired, in each case, payable on the later of (a) the Effective Date or as soon as reasonably practicable thereafter and (b) the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

  (c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    Class 3 — First Lien Term Loan Claims

  (a)    *Classification*: Class 3 consists of all First Lien Term Loan Claims against the Debtors.

(b)    *Allowance*: The First Lien Term Loan Claims shall be Allowed in an aggregate amount of not less than $376 million.

(c)    *Treatment*:  On the Effective Date, except to the extent that a Holder agrees to a less favorable treatment, each Holder of an Allowed First Lien Term Loan Claim shall receive, in full and final satisfaction of its First Lien Term Loan Claim and in consideration for the Credit Bid Transaction, its pro rata share of (i) First Lien Emergence Excess Cash and (ii) the New First Lien Term Loans, subject to the Equitization Election.

Any accrued and unpaid post-petition interest under the First Lien Credit Agreement (which shall accrue at the non-default contract rate during the Chapter 11 Cases) shall be paid in full in Cash on the Effective Date.

Each Holder of an Allowed First Lien Term Loan Claim shall be entitled to elect (the "Equitization Election") to forgo a portion of its New First Lien Term Loan allocation (such portion, its "Election TL Portion") in exchange for a portion of the 1L TL Equitization Pool (as defined below) (such portion, its "Election Pool Portion").  Each Holder making the Equitization Election shall be allocated an Election TL Portion equal to the total amount of New First Lien Term Loans it would have otherwise received on account of such Holder's Equitization Election Term Loan Claims, *provided*, *however,* that the aggregate Election TL Portion for all Holders shall not exceed $30 million, and if the aggregate Election TL Portion of all such Holders making the Equitization Election would exceed $30 million, then $30 million of aggregate Election TL Portion shall be allocated among Equitizing Holder Institutions on a pro rata basis based on each Equitizing Holder Institution's holdings of Allowed First Lien Term Loan Claims on the Distribution Record Date relative to the aggregate amount of Allowed First Lien Term Loan Claims held by all Equitizing Holder Institutions on the Distribution Record Date, *provided further*, that for any Equitizing Holder Institution, such Equitizing Holder Institutions' Election TL Portion shall not exceed the amount of the New First Lien Term Loans it would have otherwise received on account of its Equitization Election Term Loan Claims. The Election Pool Portion of each such Holder making the Equitization Election shall be its pro rata share of the 1L TL Equitization Pool calculated based on its Election TL Portion, and such Holders shall have the ability to allocate such Election Pool Portion and such Election TL Portion among its Affiliates; *provided* that, any 1L TL Equitization Excess Cash portion in the 1L TL Equitization Pool shall be allocated in reverse order of size of each Holder's Election TL Portion (such that a Holder's pro rata share of the 1L TL Equitization Pool may consist solely of Cash), unless otherwise agreed.

The "1L TL Equitization Pool" shall consist of (i) 1L TL Equitization Excess Cash (if any) and (ii) BidCo Equity equal to 20% of total BidCo Equity less 0.4878% per $1 million of 1L TL Equitization Excess Cash,

provided, that, for the avoidance of doubt, any BidCo Equity in the 1L TL Equitization Pool shall be subject to dilution by the MIP.

"First Lien Emergence Excess Cash" means the Initial First Lien Excess Cash plus the Remaining First Lien Excess Cash.

"Initial First Lien Excess Cash" means all Emergence Excess Cash up to $149.727 million.

"1L TL Equitization Excess Cash" means Emergence Excess Cash in excess of $149.727 million and up to $190.727 million.

"Remaining First Lien Excess Cash" means Emergence Excess Cash in excess of $190.727 million.

(d)    *Voting*: Class 3 is Impaired under the Plan, and the Holders of First Lien Term Loan Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 — Second Lien Term Loan Claims

(a)    *Classification*: Class 4 consists of all Second Lien Term Loan Claims against the Debtors.

(b)    *Allowance*: The Second Lien Term Loan Claims shall be Allowed in an aggregate amount of not less than $340 million.

(c)    *Treatment*: On the Effective Date, except to the extent that such Holder agrees to a less favorable treatment, each Holder of an Allowed Second Lien Term Loan Claim shall receive, in full and final satisfaction of such Claim and in consideration for the Credit Bid Transaction, its pro rata share of 100% of the BidCo Equity, subject to dilution by any BidCo Equity in the 1L TL Equitization Pool, the Advisory Equity and the Management Incentive Plan.

(d)    *Voting*: Class 4 is Impaired under the Plan and the Holders of Second Lien Term Loan Claims are entitled to vote to accept or reject the Plan.

5.    Class 5 — Third Lien Term Loan Claims

(a)    *Classification*: Class 5 consists of all Third Lien Term Loan Claims against the Debtors.

(b)    *Allowance*: The Third Lien Term Loan Claims shall be Allowed in an aggregate principal amount of $31 million.

(c)    *Treatment*: On the Effective Date, each Holder of an Allowed Third Lien Term Loan Claim shall receive, in full and final satisfaction of such Claim,

its pro rata share of (i) $9.25 million in Cash, *plus* (ii) any portion of the Third Lien Restructuring Expenses Amount not used to pay the Restructuring Expenses of the Specified Third Lien Parties.

(d)     *Voting*: Class 5 is Impaired under the Plan and the Holders of Third Lien Term Loan Claims are entitled to vote to accept or reject the Plan.

6.     Class 6 — General Unsecured Claims

(a)     *Classification*: Class 6 consists of all General Unsecured Claims.

(b)     *Treatment*: On the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of its General Unsecured Claim, its pro rata share of the GUC Trust Interests.

(c)     *Voting*: Class 6 is Impaired under the Plan and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.     Class 7 —Intercompany Claims and Intercompany Interests

(a)     *Classification*: Class 7 consists of all Intercompany Claims and Intercompany Interests.

(b)     *Treatment*: On the Effective Date, all Intercompany Claims and Intercompany Interests will be adjusted, reinstated, or cancelled, to the extent determined to be appropriate by the Reorganized Debtors and the Required Consenting Lenders, each acting reasonably.

(c)     *Voting*: Class 7 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims Interests are not entitled to vote to accept or reject the Plan.

8.     Class 8 — Existing Equity Interests

(a)     *Classification*: Class 8 consists of all Existing Equity Interests.

(b)     *Treatment*: On the Effective Date, all Existing Equity Interests shall be cancelled, released, and extinguished, and their Holders shall neither receive nor retain any property on account of such Interests.

(c)     *Voting*: Class 8 is Impaired under the Plan. Holders of Existing Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

**C.     <u>Special Provision Governing Unimpaired Claims</u>**

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors, the Reorganized Debtors or BidCo, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired (including, for the avoidance of doubt, any Claim that is Reinstated) by the Plan. Except as otherwise specifically provided in the Plan and the Credit Bid Purchase Agreement, the Reorganized Debtors or BidCo, as applicable, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' and BidCo's legal and equitable rights with respect to any Reinstated Claim or Claim that is otherwise Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

**D.      Elimination of Vacant Classes**

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**E.      No Waiver**

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's or Entity's right to object on any basis to any Disputed Claim.

**F.      Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

**G.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B herein. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right, subject to the consent rights set forth in the Restructuring Support Agreement, and subject to the terms of the Restructuring Support Agreement, to modify the Plan in accordance with Article X herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims

or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**H.    Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or Interest, or any Class of Claims or Interests, is Impaired, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy on the Confirmation Date or such other date as fixed by the Bankruptcy Court.

**I.    Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

# ARTICLE IV
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

**A.    General Settlement of Claims and Interests**

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan that a Claim or an Interest Holder may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made on account of such Allowed Claim or Allowed Interest, including pursuant to the transactions set forth in the Restructuring Support Agreement. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromises and settlements and are in the best interests of the Debtors, their Estates, and Holders of Allowed Claims and Allowed Interests, and is fair, equitable, and within the range of reasonableness. Subject to the provisions of this Plan governing Distributions, all Distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**B.    Restructuring Transactions**

On the Effective Date, the applicable Debtors, Reorganized Debtors and BidCo shall enter into the transactions contemplated in the Credit Bid Purchase Agreement, Restructuring Support Agreement, Restructuring Term Sheet, Restructuring Steps Plan, and GUC Settlement and shall take any actions as may be necessary or appropriate to effectuate the Restructuring Transactions (to the extent not already effected), including, as applicable, to effectuate the Credit Bid Transaction and a corporate restructuring of the overall corporate structure of the Debtors, to the

extent provided herein, the Restructuring Support Agreement, the Restructuring Term Sheet, the GUC Settlement, or in the Definitive Documents, including: (a) the issuance, transfer, or cancellation of any Securities, notes, instruments, Certificates, and other documents required to be issued, transferred, or cancelled pursuant to the Plan or any Restructuring Transaction, (b) the issuance of the BidCo Equity, (c) the issuance of the New Revolving Facility and entry into the New Revolving Facility Documents, (d) the issuance of the New First Lien Term Loan Facility and entry into the New First Lien Term Loan Facility Documents, (e) the entry into the New ICA, and (f) execution of the New Governance Documents, in each case, subject to the Plan and the consent rights, agreements, and obligations contained in the Restructuring Support Agreement and Restructuring Term Sheet; (g) the funding of the Wind-Down Reserve; (h) entry into the Advisory Agreement; (i) entry into the Transition Services Agreement, (j) entry into the GUC Trust Documents; (k) such other transactions that, in the reasonable business judgment of the Reorganized Debtors are required to effectuate the Restructuring Transactions; and (l) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

On the Effective Date, all Credit Bid Purchased Assets shall be transferred to and vest in BidCo Buyer free and clear of all Liens, Claims, Causes of Action, interests, charges, or other encumbrances (other than the Credit Bid Permitted Liens and Credit Bid Assumed Liabilities) pursuant to sections 363, 1123, 1141(b) and 1141(c) of the Bankruptcy Code.

The Confirmation Order shall and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

## C.   GUC Settlement

The Plan incorporates and implements the GUC Settlement, a compromise and settlement of numerous issues and disputes between and among (a) the Debtors, (b) the Committee, (c) the Holders of First Lien Claims and Holders of Second Lien Claims, and (d) the Sponsor, among others. Except as otherwise expressly set forth herein or in the Confirmation Order or Sale Order, as applicable, the GUC Settlement constitutes a settlement of all potential issues and claims between and among (a) the Debtors, (b) the Committee, (c) the Holders of First Lien Claims and Holders of Second Lien Claims, and (d) the Sponsor, among others.

## D.   Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt or equity Security, or of other interest in the Debtors, the Reorganized Debtors or BidCo; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds,

bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment. Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## E.   Employee and Retiree Benefits

Unless otherwise provided herein or in the Confirmation Order (including as modified by the Management Incentive Plan) or in the Credit Bid Purchase Agreement, rejected pursuant to a separate order of the Bankruptcy Court, designated as a contract or lease to be rejected on the Schedule of Rejected Executory Contracts and Unexpired Leases, or the subject of a separate rejection motion filed by the Debtors, and subject to Article V and the consent of the Required Consenting Lenders, BidCo, shall assume all employment agreements, including any severance, retention, and incentive compensation programs in place as of the Effective Date. Pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

Other than as otherwise contemplated in the Plan or other Definitive Documents, for the avoidance of doubt, no provision in any agreement, plan, or arrangement to be assumed pursuant to the foregoing paragraph relating to the award of equity or equity-like compensation shall be binding on, or honored by, the Reorganized Debtors or BidCo. Nothing in this Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' or BidCo's defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs and plans.

## F.   Sources of Consideration for Plan Distributions

The distributions under the Plan shall be funded with (a) the issuance of the BidCo Equity, (b) the issuance of or borrowings under (i) the New Revolving Facility and (ii) the New First Lien Term Loan Facility, and (c) Cash on hand. Each such distribution and issuance referred to in Article IV shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person or Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s) or BidCo entity.

1.      BidCo Equity

On the Effective Date, BidCo Parent shall issue the BidCo Equity pursuant to the Plan and the Restructuring Steps Plan. The issuance of the BidCo Equity, including, if applicable, equity awards reserved for the Management Incentive Plan, by BidCo shall be authorized without the need for any further corporate or other action by the BidCo or by Holders of any Claims or Interests. All of the shares (or comparable units) of BidCo Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable and shall not have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law. Each distribution and issuance of BidCo Equity shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable BidCo entity. Any Entity's acceptance of BidCo Equity shall be deemed as its agreement to the New Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. The BidCo Equity will not be registered under the Securities Act or listed on any exchange as of the Effective Date. The Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the BidCo Equity under applicable securities Laws in connection with the Plan. Notwithstanding anything to the contrary in the Plan, no Entity shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the BidCo Equity is exempt from registration, and any transfer agent, or other similarly situated agent, trustee, or other non-governmental Entity shall accept and rely upon the Plan and the Confirmation Order in lieu of a legal opinion for purposes of determining whether the initial offer and sale of the BidCo Equity were exempt from registration under section 1145 of the Bankruptcy Code, and whether the BidCo Equity was, under the Plan, validly issued, fully paid, and non-assessable.

Pursuant to section 1145 of the Bankruptcy Code, to the maximum extent permitted by law, the offering, issuance, and distribution of the BidCo Equity in respect of eligible Allowed Claims pursuant to the Plan shall be exempt from, among other things, the registration and/or prospectus delivery requirements of section 5 of the Securities Act and any other applicable federal, state, local or other law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, or sale of Securities. Such BidCo Equity, (a) will not constitute "restricted securities" as defined in rule 144(a)(3) under the Securities Act and (b) will be freely tradable and transferable in the United States by each recipient thereof that (i) is an entity that is not an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (ii) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (iii) has not been such an "affiliate" within 90 days of the time of the transfer, and (iv) has not acquired such securities from an "affiliate" within one year of the time of transfer. Notwithstanding the foregoing, such BidCo Equity shall remain subject to compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such BidCo Equity and subject to any restrictions in the New Organizational Documents. To the extent the issuance under section 1145 of the Bankruptcy Code is not available, the BidCo Equity will be issued without registration under the Securities Act in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder or Regulation S promulgated thereunder. To the extent issued in reliance on section 4(a)(2) of the Securities Act or Regulation D thereunder

41

or Regulation S promulgated thereunder, such BidCo Equity will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable Law and subject to any restrictions in the New Organizational Documents.

2.      New Revolving Facility and the New First Lien Term Loan Facility

On the Effective Date, BidCo Buyer and the other loan parties under the New Revolving Facility and the New First Lien Term Loan Facility shall enter into such facilities on the terms set forth in the New Revolving Facility Documents and the New First Lien Term Loan Facility Documents.

Confirmation of the Plan shall be deemed approval of the New Revolving Facility Documents and the New First Lien Term Loan Facility Documents (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or BidCo in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Debtors and BidCo, as applicable, are authorized to execute and deliver those documents necessary or appropriate to consummate the applicable New Revolving Facility Documents and the New First Lien Term Loan Facility Documents without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person or Entity, subject to such modifications as may be agreed between the Debtors or Bidco and the Required Consenting Lenders.

On the Effective Date, and without the need for any further corporate action or other action by holders of Claims or Interests, all of the Liens and security interests to be granted in accordance with the New First Lien Term Loan Facility Documents and the New Revolving Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New First Lien Term Loan Facility Documents and the New Revolving Facility Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the  New First Lien Term Loan Facility Documents and the New Revolving Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. BidCo and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

G. **Corporate Action**

Upon the Effective Date, all actions contemplated under the Plan (including the Restructuring Steps Plan) and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date) shall be deemed authorized and approved in all respects.

All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the transactions contemplated by the Credit Bid Purchase Agreement and the Transition Services Agreement. The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under non-bankruptcy law.

H. **Corporate Existence**

Except as otherwise provided in the Plan or Plan Supplement, each Debtor, as Reorganized Debtors, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable law). As soon as reasonably practicable after the Effective Date, the actions described in the Restructuring Steps Plan required to be taken after the Effective Date shall be taken, including that the Reorganized Debtors shall be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On the Effective Date, the by-laws (or other governance documents) of the Reorganized Debtors shall be deemed modified to restrict the issuance of non-voting securities in accordance with section 1123(a)(6) of the Bankruptcy Code.

I. **Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Plan, the Plan Supplement, the Confirmation Order, the Sale Order, the Credit Bid Purchase Agreement, or in any other agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all

Claims, rights, defenses, and Causes of Action of the Debtors, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, Causes of Action, charges, or other encumbrances. If the Reorganized Debtors default in performing under the provisions of the Plan and the Chapter 11 Cases are converted to Chapter 7, all property vested in each Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the bankruptcy Estates in such Chapter 7 cases. On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**J.**      **Cancellation of Prepetition Credit Agreements, Notes, Instruments, Certificates, and Other Documents**

Except as otherwise provided in the Plan, the Confirmation Order, any agreement, instrument or other document entered into in connection with or pursuant to the Plan, the Restructuring Support Agreement, or the Restructuring Term Sheet, on the Effective Date, all credit agreements, security agreements, intercreditor agreements, notes, instruments, Certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors or the Reorganized Debtors thereunder or in any way related thereto shall be discharged and deemed satisfied in full, and the Agents/Trustees shall be automatically and fully discharged and released of all of their duties and obligations thereunder except as may be necessary to effectuate the terms of this Plan, including, but not limited to, the purposes listed in subsections (a) through (j) hereof; *provided*, *that*, notwithstanding Confirmation or the occurrence of the Effective Date, any such document that governs the rights or obligations of the Holder of a Claim or Interest shall continue in effect solely for purposes of (a) enabling Holders of Allowed Claims and Allowed Interests to receive Distributions under the Plan as provided herein, (b) preserving, governing, exercising and enforcing any contractual rights and obligations among the Agents and the lenders or Holders party thereto (including, without limitation, compensation, indemnification, contribution, expense reimbursement, and Distribution provisions), (c) preserving any rights of the Agents thereunder to maintain, exercise, and enforce any applicable rights of indemnity, compensation, reimbursement, contribution, or subrogation or any other claim or entitlement, in each case solely as against any money or property distributable to the applicable Holders under this Plan, (d) permitting and preserving the rights of each Agent to perform any functions that are necessary to effectuate the immediately foregoing, including appearing and being heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited to, enforcing any obligations owed to the Agents or Holders of such Claims or Interests, (e) facilitating the entry into the New Revolving Facility and the New Revolving Facility Documents, (f) facilitating the entry into the New First Lien Term Loan Facility and the New First Lien Term Loan Facility Documents, (g) facilitating the entry into the New ICA, (h) facilitating the entry into the New Governance Documents, and (i) furthering any other purpose as set forth in the Restructuring Support Agreement and the Restructuring Term Sheet.

In addition, to the extent that written notice is provided to the Debtors prior to entry of the Confirmation Order notifying the Debtors that a Specified Surviving Obligation (as defined in the RCF Payoff Letter (as defined in the Final Cash Collateral Order)) has been liquidated and is no

longer contingent, such liquidated Claim(s) shall be paid in full in Cash on the Effective Date in accordance with the terms of the First Lien Credit Agreement.

## K.     **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

## L.     **Preservation of Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue or settle any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action included in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, in each case other than (i) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date and (ii) the Causes of Action that constitute Credit Bid Purchased Assets, which shall be transferred to BidCo Buyer in accordance with the Credit Bid Purchase Agreement and which, in the case of the New Jersey Action, shall remain subject to the GUC Settlement, the Commercial Tort Claim Share and the GUC Trust Agreement.

The Reorganized Debtors may pursue or settle such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity (other than the Required Consenting Lenders) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released under the Plan or pursuant to a Final Order (including, without limitation, the Cash Collateral Orders), the Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity.** Unless any Causes of Action of the Debtors are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Reorganized Debtors expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain the Causes of Action of the Debtors notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code

and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

For the avoidance of doubt and notwithstanding anything to the contrary in this Article IVL, (i) the Debtors and the Reorganized Debtors do not reserve any Claims or Causes of Action that have been expressly released by the Debtors pursuant to the Debtor Release (including, for the avoidance of doubt, Claims against the Consenting Lenders and the Sponsor), (ii) subject to clause (i), any Causes of Action that constitute Credit Bid Purchased Assets shall be transferred to BidCo Buyer in accordance with the Credit Bid Purchase Agreement (but, in the case of the New Jersey Action, shall remain subject to the GUC Settlement, the GUC Commercial Tort Claim Share and the GUC Trust Agreement) and (iii) all preference actions pursuant to section 547 of the Bankruptcy Code against the Holders of General Unsecured Claims that are trade creditors (*i.e.*, Entities that provided goods or services to the Debtors) shall be released on the Effective Date.

## M.   **Management Incentive Plan**

BidCo shall implement a Management Incentive Plan reserving up to 10% of the BidCo Equity for awards to their management employees, which will otherwise contain terms and conditions as determined by the New Board. For the avoidance of doubt, any BidCo Equity issued or reserved for issuance under the Management Incentive Plan will be calculated on a fully-diluted and fully-distributed basis.

## N.   **Directors and Officers of the Reorganized Debtors.**

As of the Effective Date, the terms of the current members of the board of directors or board of managers, as applicable, of each of the Debtors shall expire, and the new directors and officers of the Reorganized Debtors and BidCo shall be appointed. Except to the extent that a current member of the board of directors or board of managers, as applicable, of a Debtor is designated to serve as a director, manager, or sole manager of a Reorganized Debtor, the current members of the board of directors or board of managers, as applicable, of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the respective Debtor on or after the Effective Date, and each such director shall be deemed to have resigned or shall otherwise cease to be a manager of or director of the respective Debtor on the Effective Date. Each of the directors, managers, sole managers and officers of each of the Reorganized Debtors and BidCo shall serve pursuant to the terms of the applicable governance documents for such entity and may be designated, replaced, or removed in accordance with such governance documents for such entity.

## O.   **Wind-Down Officer**

On and after the Effective Date, the Wind-Down Officer shall act for the Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or

other Governing Body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same), and shall be subject to the GUC Trust Agreement. On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, or member of any other Governing Body of each Reorganized Debtor shall be deemed to have resigned, solely in their capacities as such, and the Wind-Down Officer shall be appointed as the sole manager, and sole officer of each Reorganized Debtor, and shall succeed to the powers of the respective Reorganized Debtor's managers, directors, officers, and members of any other Governing Bodies without any further action required on the part of the respective Reorganized Debtor, the members or any other equity holders of the respective Reorganized Debtor, or the officers, directors, managers, or Governing Body, as applicable, of the respective Reorganized Debtor, in each case in accordance with the Plan, Restructuring Support Agreement and Restructuring Steps Plan and the GUC Trust Agreement (as to the extent applicable). The foregoing shall not limit the authority of the respective Reorganized Debtor the Wind-Down Officer, as applicable, to continue the employment of any former manager or officer.

As of the Effective Date, the Wind-Down Officer is authorized to execute, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, Restructuring Support Agreement and Restructuring Steps Plan and the GUC Trust Agreement and the continuation of the Reorganized Debtors until wound down, in accordance with the Wind-Down Budget. Subject in all respects to the terms of this Plan, the Restructuring Support Agreement and the Restructuring Steps Plan and the GUC Trust Agreement, the Wind-Down Officer shall have the power and authority to take any action necessary to dissolve and wind down the Reorganized Debtors, and shall file a certificate of cancellation for the Reorganized Debtors, or such other documentation required to dissolve such entities, together with all other necessary corporate and company documents, to effect the dissolution and winding up of the Reorganized Debtors under the applicable laws of its state of formation. The filing by the Wind-Down Officer of the Reorganized Debtor's certificate of cancellation shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule. The Wind-Down Officer shall be authorized to certify or attest to any of the forgoing actions.

## P.   **GUC Trust**

### 1.   Interest in the GUC Trust

Any and all GUC Trust Interests will not, and are not intended to, constitute "securities" and will not be registered pursuant to the Securities Act, as amended, or any state securities law. However, if it should be determined that the GUC Trust Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will apply to the GUC Trust Interests. Any and all GUC Trust Interests shall not be certificated, shall be subject to certain restrictions, shall be non-transferable (other than if transferred by will, intestate succession, or otherwise by operation of law). However, if it should be determined that GUC Trust Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will apply to the GUC Trust Interests.

### 2.   Creation and Governance of the GUC Trust

Notwithstanding anything contained in the Plan, the Plan Supplement, any Definitive Document or the Credit Bid Purchase Agreement, on the Effective Date, (a) the GUC Trust Agreement shall be executed and delivered by the parties thereto, and GUC Trust shall be established pursuant to the GUC Trust Agreement and the other GUC Trust Documents, (b) all GUC Trust Interests shall be distributed to Holders of Allowed General Unsecured Claims in accordance with the Plan, and (c) the Debtors shall be deemed to transfer to the GUC Trust all of their rights, title, and interest in and to all of (i) the GUC Cash Pool and (ii) GUC Commercial Tort Claim Share, in each case free and clear of all Liens, charges, Claims, encumbrances, and interests, in accordance with section 1141 of the Bankruptcy Code. The GUC Trust shall be formed for the exclusive benefit of the Holders of Allowed General Unsecured Claims.

The transfer of GUC Trust Assets to the GUC Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax. The GUC Trustee shall be the exclusive administrator of the assets of the GUC Trust for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(3) of the IRC, as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the GUC Trustee's duties under the GUC Trust Agreement.

The GUC Trust shall be governed by the GUC Trust Agreement and administered by the GUC Trustee. The powers, rights, and responsibilities of the GUC Trustee shall be specified in the GUC Trust Agreement and shall include the authority and responsibility to, among other things, (i) administer the GUC Trust and the GUC Trust Assets, (ii) reconcile, resolve, contest, object to, seek to subordinate, compromise or settle all General Unsecured Claims that constitute Disputed Claims ("**GUC Claims Reconciliation**"), (iii) monitor the New Jersey Action and enforce the GUC Commercial Tort Claim Share, (iv) facilitate distributions to Holders of the GUC Trust Interests, and (v) perform such other functions as may be necessary or advisable to administer the GUC Trust and implement the GUC Settlement.

The GUC Trustee shall hold and distribute the proceeds of the GUC Trust in accordance with the provisions of this Plan and the GUC Trust Agreement.

On and after the Effective Date, the Debtors, Reorganized Debtors, and BidCo, as applicable, shall have no legal or beneficial interest in the GUC Trust Assets, and such GUC Trust Assets shall be held by the GUC Trust free and clear of all Liens, Claims and encumbrances.

3.      GUC Trustee

From and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties hereunder and may compensate and reimburse the reasonable expenses of those professionals without further order of the Bankruptcy Court from the GUC Trust Assets in accordance with the GUC Trust Agreement. For the avoidance of doubt, neither the Reorganized Debtors nor BidCo shall be responsible for any costs, fees, or expenses of the GUC Trust, unless otherwise agreed in writing.

The GUC Trust Agreement shall include reasonable and customary provisions that allow for indemnification of the GUC Trustee by the GUC Trust. Any such indemnification shall be the sole responsibility of the GUC Trust and payable solely from the GUC Trust Assets.

4.       Cooperation of the Reorganized Debtors and BidCo

The Reorganized Debtors and BidCo shall reasonably cooperate with the GUC Trust, the GUC Trustee and their agents and representatives in the administration of the GUC Trust, including, providing reasonable access to books and records with respect to (a) GUC Claims Reconciliation, (b) the New Jersey Action, including the status thereof, and any proceeds generated or recovered from such action, and (c) administering the GUC Trust. The Reorganized Debtors and BidCo shall undertake reasonable efforts to assist the GUC Trust in connection with the foregoing, and the GUC Trust may enter into agreements with the Reorganized Debtors and BidCo in order to obtain information from the Reorganized Debtors and BidCo on a confidential basis, without being restricted by or waiving any applicable work product, attorney-client, or other privilege. The GUC Trust's receipt of documents, information or communications from the Reorganized Debtors or BidCo, as applicable, shall not constitute a waiver of any privilege. For the avoidance of doubt, the GUC Trust shall not be responsible for legal fees, if any, incurred by the Reorganized Down Debtors or BidCo in fulfilling its obligations under this Article IVP or any other provisions of this Plan.

5.       GUC Commercial Tort Claim Share

BidCo shall prosecute the New Jersey Action in good faith and in an expeditious manner. The Reorganized Debtors and BidCo shall, upon the reasonable request of the GUC Trustee, provide the GUC Trustee with information as to the status of the New Jersey Action, including the litigation, prosecution or settlement negotiations in connection therewith, and shall consult with the GUC Trustee in connection with the foregoing; *provided, however*, that any settlement or resolution of the New Jersey Action shall require the prior written consent of the GUC Trustee (which consent shall not be  unreasonably withheld or delayed) to the extent such settlement would result in a GUC Commercial Tort Claim Share of less than $5 million in the aggregate, payable in full promptly following the consummation of the settlement.

Upon BidCo receiving any proceeds with respect to the GUC Commercial Tort Claim Share, whether as a result of a judgment, settlement, or otherwise, BidCo shall pay such proceeds into the GUC Trust within ten (10) business days of BidCo's receipt thereof.

6.       Tax Treatment

In furtherance of this Article IVP, (a) the GUC Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, subject to the DOF Election, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code owned by the holders of GUC Trust Interests, which shall be treated as the grantors and deemed owners of such trust, consistent with the terms of the Plan, (b) the sole purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade

or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the GUC Trust, (c) for U.S. federal income tax purposes, all parties (including the Debtors and the Estates, holders of GUC Trust Interests and the GUC Trustee) shall treat the transfer of GUC Trust Assets (net of any applicable liabilities) to the GUC Trust for the benefit of the Holders of GUC Trust Interests as, the transfer by the Debtors of the GUC Trust Assets, subject to applicable liabilities and obligations, directly to the holders of GUC Trust Interests in satisfaction of their Claims, followed by the transfer of such assets by such holders to the GUC Trust, (d) all parties shall report consistently with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee), including for U.S. federal income tax purposes, (e) the GUC Trustee shall be responsible for filing returns for the GUC Trust as a "grantor trust" pursuant to Treasury Regulation section 1.671-4(a), and (f) the GUC Trustee shall annually send to each holder of GUC Trust Interests a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal, state and local income tax purposes.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or adverse determination by the IRS upon audit), the GUC Trustee may timely elect to timely make a DOF Election (and make any other appropriate elections) unless, either all of the GUC Trust Assets have been distributed to the holders of the GUC Trust Interests or the percentage of the GUC Trust Assets distributable to each holder of the GUC Trust Interests has become fixed and determinable, and (y) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a DOF Election is made, all parties (including the Debtors and the Estates, holders of GUC Trust Interests and the GUC Trustee) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing. As to any assets allocable to, or retained on account of, Disputed General Unsecured Claims, all distributions shall be net of any expenses, including taxes, relating to the retention or disposition of such assets, and the GUC Trustee shall be responsible for payment, solely out of the assets of such retained assets, of any taxes imposed on or in respect of such assets. All parties (including the Debtors, Reorganized Debtors, BidCo, the Estates, the GUC Trust Trustee and the holders of GUC Trust Interests) will be required to report for tax purposes consistently with the foregoing.

For U.S. federal income tax purposes, all parties (including BidCo, the Debtors and the Estates, and the GUC Trustee) shall treat the receipt by BidCo of any portion of the GUC Commercial Tort Claim Share as the receipt by BidCo of such amount as an agent acting on behalf of the GUC Trust, and all parties shall report consistently with the foregoing, including for U.S. federal income tax purposes unless otherwise required by a determination within the meaning of section 1313 of the Tax Code.

The GUC Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

7.    Termination and Dissolution of the GUC Trust

The GUC Trustee's obligations shall be discharged, the GUC Trust Agreement shall be terminated, and the GUC Trust shall be dissolved, as the case may be, at such time as all GUC

Trust Assets have been distributed to the Holders of GUC Trust Interests as required under the Plan and the GUC Trust Agreement. In no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless extended by an order of the Bankruptcy Court.

Upon dissolution of the GUC Trust, any remaining GUC Trust Assets shall be distributed to holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Trust Agreement, as appropriate. The GUC Trust may abandon any non-Cash assets that the GUC Trustee, in its discretion determines to be of inconsequential value or impractical to distribute to holders of GUC Trust Interests. To the extent the GUC Trust retains any residual Cash or GUC Trust Assets, but such assets, net of GUC Trust expenses, are in the discretion of the GUC Trustee insufficient or impractical to effectuate any further distribution pursuant to the Plan or the GUC Trust Agreement, the GUC Trust is authorized and empowered to donate such residual GUC Trust Assets to a section 501(c)(3) of the Tax Code non-profit organization selected by the GUC Trustee in its discretion.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.      Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be assumed by the applicable Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (1) those that are identified on the Rejected Executory Contract and Unexpired Lease List; (2) those that have been previously rejected by a Final Order (including the Rebate Rejection Orders); (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; *provided* the Debtors or the Reorganized Debtors, as applicable, retain the right to alter, amend, modify or supplement the Rejected Executory Contract and Unexpired Lease List, including by way of adding or removing a particular Executory Contract or Unexpired Lease from the Rejected Executory Contract and Unexpired Lease List at any time through and including the Effective Date (which updated list(s) shall be Filed as part of an amended Plan Supplement, with counterparties to any Executory Contracts or Unexpired Leases added to the Assumed Executory Contracts or Unexpired Leases List having until 14 days after service of the amended list to object to the proposed assumption or Cure Amount, and with counterparties to any Executory Contracts or Unexpired Leases added to the Rejected Executory Contracts or Unexpired List having until 30 days after the Effective Date to File any Proofs of Claim with respect to Claims arising from such rejection); *provided*, *further*, that the Rejected Executory Contract and Unexpired Lease List shall at all times be acceptable to the Required Consenting Lenders, and the Debtors or the Reorganized Debtors, as applicable, shall not seek to assume or reject Executory Contracts and Unexpired Leases, except with the prior written consent (which may be provided through electronic mail) of the Required Consenting Lenders; *provided, further*, that the Executory Contract and Unexpired Leases that constitute Credit Bid Purchased Assets shall be assigned to

BidCo Buyer and BidCo shall not have any liability or obligations under or related to any Executory Contract or Unexpired Lease that does not constitute a Credit Bid Purchased Asset.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments (if applicable), or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Leases List, or the Rejected Executory Contracts and Unexpired Leases List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court Order but not assigned to a third party (including BidCo Buyer) before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors, with the consent of the Required Consenting Lenders, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List at any time up to the Effective Date (which updated list(s) shall be Filed as part of an amended Plan Supplement, with counterparties to any Executory Contracts or Unexpired Leases added to the Assumed Executory Contracts or Unexpired Leases List having until 14 days after service of the amended list to object to the proposed assumption or Cure Amount, and with counterparties to any Executory Contracts or Unexpired Leases added to the Rejected Executory Contracts or Unexpired List having until 30 days after the Effective Date to File any Proofs of Claim with respect to Claims arising from such rejection).

## B.    <u>Indemnification Obligations</u>

On and after the Effective Date, the Indemnification Provisions will be assumed and assigned to BidCo Buyer and irrevocable and survive the Effective Date. None of the Debtors or BidCo Buyer, as applicable, shall take any action to amend or restate their respective governance documents before or after the Effective Date to amend, augment, terminate, or adversely affect any of the Debtors' or BidCo Buyers' obligations to provide such indemnification rights or such directors', officers', managers', employees', or agents' indemnification rights.

### C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the Effective Date or (2) entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors the Estates, or the Reorganized Debtors or their respective property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Rejected Executory Contract or Unexpired Lease List or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III herein.

### D.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

The Debtors, the Reorganized Debtors or BidCo Buyer, as applicable, shall pay the Cure Amounts listed on the Assumed and Assigned Executory Contracts and Unexpired Leases List, if any, on the Effective Date or as soon as reasonably practicable thereafter, with the amount and timing of payment of any such Cure dictated by the Debtors' ordinary course of business. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of a Cure Amount that differs from the amount listed on the Assumed and Assigned Executory Contracts and Unexpired Leases List must be Filed by the applicable counterparty and served on the Claims and Noticing Agent by the Cure/Assumption Objection Deadline. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor or BidCo, without the need for any objection by the Reorganized Debtors, BidCo or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure Amount shall be deemed fully satisfied, released, and discharged upon payment by the Debtors, the Reorganized Debtors or BidCo of the Cure Amounts listed on the Assumed and Assigned Executory Contracts and Unexpired Leases List; provided that nothing herein shall prevent the Reorganized Debtors or BidCo from paying any Cure Amount despite the failure of the relevant counterparty to File such request for payment of such Cure Amount. The Reorganized Debtors or BidCo also may settle any Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed by the Cure/Assumption Objection Deadline. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assignment of any Executory Contract or Unexpired Lease shall be deemed to have consented to such assumption or assignment, as applicable.

If there is any dispute regarding any Cure Amount, the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assignment, then payment of the Cure Amount shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors, the Reorganized Debtors or BidCo, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure Amount pursuant to this Article V shall result in the full release and satisfaction of any Claims for a Cure Amount, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure Amount has been fully paid pursuant to this Article V, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

**E.     Insurance Policies**

Each of the Insurance Policies are treated as Executory Contracts under the Plan. Unless otherwise provided herein, in the Plan Supplement or any document related thereto, or in the Credit Bid Purchase Agreement, on the Effective Date, (1) the Debtors shall be deemed to have assumed all Insurance Policies, and (2) such Insurance Policies shall revest in the Reorganized Debtors or vest in BidCo, as applicable. Nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (x) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such Insurance Policies or (y) alters or modifies the duty, if any, that the Insurers pay Claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor. For the avoidance of doubt, Insurers shall not need to nor be required to File or serve a Cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing Cure Amounts or Claims.

The Debtors or the Reorganized Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any directors' and officers' Insurance Policies in effect prior to the Effective Date, and any directors and officers of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled, subject to and in accordance with the terms and conditions of such Insurance Policy in all respects, to the full benefits of any such Insurance Policy for the full term of such policy regardless of whether such directors or officers remain in such positions after the Effective Date. For the avoidance of doubt, the directors' and officers' Insurance Policies shall revest in the Reorganized Debtors. Notwithstanding anything herein to the contrary, the Debtors shall retain the ability to supplement such directors' and officers' insurance

policies as the Debtors deem necessary, including by purchasing any tail coverage (including, without limitation, a tail policy).

## F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## G.    Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List or Assumed and Assigned Executory Contracts and Unexpired Leases List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or Reorganized Debtors, as applicable, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, subject to the consent of the Required Consenting Lenders (which consent shall not be unreasonably withheld), or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

## H.    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## I.    Contracts and Leases Entered into after the Petition Date

Notwithstanding anything contained herein (including any release, discharge, exculpation or injunction provisions) or the Confirmation Order, contracts, agreements, instruments, Certificates, leases and other documents entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder or BidCo, as applicable, in the ordinary course of their business. Accordingly, such contracts, agreements, instruments, certificates, leases and other documents (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by the Plan (including the release,

discharge, exculpation and injunction provisions), the entry of the Confirmation Order and any other Definitive Documents.

# ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.**   **The Distribution Agent and Servicers**

1.   Powers and Roles

All Distributions under the Plan shall be made by the applicable Distribution Agent on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the next Interim Distribution Date) or as soon as reasonably practicable thereafter, as provided herein and consistent with the GUC Trust Documents. Where Allowed Claims that are governed by a separate agreement and administered by a Servicer, the Distribution Agent and the Reorganized Debtors, together with the applicable Servicer, shall use commercially reasonable efforts to implement distributions in accordance with the Plan and with the applicable agreements.

Without further order of the Bankruptcy Court, the Distribution Agent and, where applicable, the Servicers, shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the GUC Trust Documents; (b) make all distributions contemplated hereby; (c) employ professionals and incur reasonable fees and expenses to represent it with respect to such responsibilities; and (d) exercise such other powers as may be vested in them by order of the Bankruptcy Court, pursuant to the Plan or the GUC Trust Documents, or as deemed by the Distribution Agent to be necessary and proper to implement the Plan.

If the Distribution Agent is one or more of the Reorganized Debtors, the Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. In addition, neither the GUC Trustee nor the Servicers shall be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

2.   Expenses

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable and documented fees and out-of-pocket expenses incurred by the Distribution Agent or the Servicers on or after the Effective Date (including the reasonable and documented fees and expenses of counsel) in connection with making distributions shall be paid by the Reorganized Debtors, in the ordinary course, without duplication of payments of Restructuring Expenses or Professional Fees.

**B.**   **Delivery Procedures**

1.   Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective

agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests. Consistent with this Plan and the GUC Trust Documents, the applicable Distribution Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The applicable Distribution Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided in the Plan, the GUC Trust Documents, or prior Bankruptcy Court order, the Distribution Agent shall make all Distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated in the Debtors' records as of the date of the applicable Distribution.

The manner of all Distributions shall be determined at the discretion of the Reorganized Debtors or, in the case of General Unsecured Claims, the GUC Trustee. In addition, with respect to payment of any Cure Amount or disputes over any Cure Amount, neither the Reorganized Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim on account of the applicable Cure Amount.

2.      Interim Distribution Date

Except as otherwise provided in the Plan or prior Bankruptcy Court order, the Distribution Agent shall make additional interim distributions to holders of Allowed Claims that were not considered Allowed as of the Distribution Record Date.

The Reorganized Debtors and the GUC Trustee (as it relates to General Unsecured Claims) shall have reasonable discretion to determine the timing of these Interim Distribution Dates based on among other things, resolutions of Disputed Claims and the administrative costs of such a distribution. The manner of such distributions shall be determined at the reasonable discretion of the Reorganized Debtors or the GUC Trustee, as applicable.

3.      Undeliverable and Unclaimed Distributions

(a)      *Undeliverable Distributions*. If any Distribution to a Holder of an Allowed Claim or Interest is returned to the Distribution Agent as undeliverable, no further Distributions shall be made to such Holder unless and until the Distribution Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed Distributions shall be made to such Holder on the next Distribution Date. Undeliverable Distributions shall remain in the possession of the Reorganized Debtors or the GUC Trust, as applicable, until such time as a Distribution becomes deliverable, or such Distribution reverts to the Reorganized Debtors or the GUC Trust, as applicable, or is cancelled pursuant to Article VI.B, and shall not be supplemented with any interest, dividends, or other accruals of any kind.   The Debtors, the

Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any Distributions under the Plan, except in the event of actual fraud, gross negligence, or willful misconduct, as determined by a Final Order of a court of competent jurisdiction. The Debtors, the Reorganized Debtors and the Distribution Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

(b)     *Reversion*. Any Distribution under the Plan that is an unclaimed Distribution for a period of six months after Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed Distribution shall (i) revest in the applicable Reorganized Debtor and, as applicable, shall be deemed cancelled or (ii) in the case of unclaimed Distributions on account of Allowed General Unsecured Claims, revert to the GUC Trust. Upon such revesting or reversion, as applicable, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the Distribution that is an unclaimed Distribution, to the contrary.

## C.     <u>Calculation</u>

1.     Full Amount Payable

Unless otherwise provided in the Plan or paid pursuant to a prior Bankruptcy Court order, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, then on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class.  Distributions on account of any Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in <u>Article VII</u>.  If any payment or act under the Plan is required to be made or performed on or by a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day.

2.     Foreign Currency Exchange Rate

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall, for the purposes of determining the amount of the applicable Distribution, be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as provided by Bloomberg L.P. or, if that rate is not available, as published in *The Wall Street Journal*, National Edition, as of a date to be agreed by the Reorganized Debtors, the Sponsor, and the Required Consenting Lenders.

3.     Distributions on Account of Obligations of Multiple Debtors

Each Claim asserted against multiple Debtors shall be treated as a single Claim and its Holder shall be entitled to a single Distribution.

4.      No Postpetition Interest

Except as may be required by the Bankruptcy Code or otherwise set forth in the Plan, postpetition interest shall not accrue or be paid on any Claims or Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim or Interest.

5.      Allocation Between Principal and Accrued Interest

Except as otherwise provided in the Plan, the GUC Trust Documents (as it relates to General Unsecured Claims), or by order of the Bankruptcy Court, including the Cash Collateral Orders, the aggregate consideration paid on account of Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

6.      Single Satisfaction of Claims

Notwithstanding anything else contained in the Plan or Confirmation Order, in no case shall a Distribution be made under the Plan on account of an Allowed Claim to the extent that the aggregate value of all property received or retained on account of such Allowed Claim (from whatever source) would exceed 100 percent of the underlying Allowed Claim.

7.      Setoffs

Except as otherwise expressly provided for herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy Law, or as may be agreed to by the Holder of a Claim, may set off or recoup against any Allowed Claim (other than an Allowed Claim held by a Consenting Lender) and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder; *provided*, *further*, that such Holder may contest any such set off by a Reorganized Debtor in the Bankruptcy Court or any other court of competent jurisdiction. For the avoidance of doubt, any such right of set off may be preserved by Filing a Proof of Claim related to such right of set off prior to the Effective Date.

8.     Minimum Distributions

Holders of Allowed Claims entitled to a Distribution of $50 or less shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder shall be forever barred from asserting that Claim against the Reorganized Debtors or their property.  If the Cash available for the final distribution is less than the cost to distribute such funds, the GUC Trustee may donate such funds to the unaffiliated charity of its choice.

No fractional shares of BidCo Equity shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any Distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares of BidCo Equity that is not a whole number, the actual distribution of shares of BidCo Equity shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded up to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded down to the next lower whole number with no further payment therefor. The total number of authorized shares of BidCo Equity to be distributed to Holders of Allowed Claims or Allowed Interests may be adjusted by the Debtors, with the consent of the Required Consenting Lenders, as necessary to account for the foregoing rounding.

D.     **Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, unless as otherwise agreed to by the Debtors or set forth in an order of the Bankruptcy Court: (a) no partial Distributions shall be made with respect to any Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; *provided*, *however,* that if a portion of a Claim is not Disputed, the Distribution Agent may make a partial Distribution based on such portion of such Claim that is not Disputed; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any Distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged. Any dividends or other Distributions arising from property distributed to Holders of Allowed Claims or Interests, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other Distributions were earlier paid to Holders of Allowed Claims or Interests in such Class.

E.     **Compliance Matters**

In connection with the Plan, to the extent applicable, the Reorganized Debtors, the GUC Trustee and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors, the GUC Trustee and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to

be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

F.     **Claims Paid or Payable by Third Parties**

1.     Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return or deliver any Distribution held by or transferred to the Holder to the applicable Reorganized Debtor or the GUC Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan; *provided* that the foregoing shall not prejudice such third party's rights (including, for the avoidance of doubt, subrogation rights) with respect to the Debtors, the Reorganized Debtors or the GUC Trustee. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the applicable Reorganized Debtor or the GUC Trustee, as applicable, annualized interest at the Federal Judgment Rate on such amount owed.

2.     Claims Payable by Insurance Carriers

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Insurers agrees to satisfy in full an Allowed Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such Insurers' agreement, such Claim may be disallowed and expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Noticing Agent without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.     Applicability of Insurance Policies

Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable Insurance Policy. Except as otherwise expressly set forth in the Plan, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including

Insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.   Allowance of Claims and Interests, Generally

Except as otherwise expressly provided in the Plan and without regard to any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Confirmation Date, the Debtors, and following the Effective Date, the Reorganized Debtors (other than with respect to General Unsecured Claims) or the GUC Trustee (with respect to General Unsecured Claims), shall have the authority, without any further notice to or action, order, or approval by the Bankruptcy Court, to (a) agree to Allow any Disputed Claim pursuant to clause (c) of the definition of "Allowed," which has not been made subject to an objection or request for estimation prior to the Confirmation Date, (b) File, withdraw, or litigate to judgment objections to Disputed Claims, (c) settle or compromise any Disputed Claim that has not been made subject to an objection or request for estimation prior to the Confirmation Date, and (d) direct the Claims Agent to adjust the Claims Register to reflect all resolutions of Disputed Claims.

The Reorganized Debtors and the GUC Trustee, as applicable, shall file any objections to Claims (including any omnibus objections) no later than the Claim Objection Deadline (as it may be extended).

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been Allowed, Disallowed or estimated by order of the Bankruptcy Court be entitled to seek reconsideration of such an order unless it Files a motion requesting such reconsideration on or before 21 calendar days after the date of the order.

### B.   Contingent and Unliquidated Claims

Except with respect to a Claim that is Allowed pursuant to clause (a) or (c) of the definition of "Allowed," any Claim that is listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been filed, shall be considered Disallowed and shall be disallowed and expunged from the Claims Register without further notice to any party or action, approval, or order of the Bankruptcy Court.

At any time prior to the Claim Objection Deadline, the Debtors, the Reorganized Debtors, the GUC Trustee (with respect to General Unsecured Claims), or the applicable claimant may request that the Bankruptcy Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Disputed Claim that is asserted in a Proof of Claim as contingent or unliquidated, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Allowed amount of such Claim, the Debtors or the Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.

## C.     Amendments

On or after the Confirmation Date, a Claim may not be amended without the prior authorization of (a) the Bankruptcy Court or (b) the Debtors, the Reorganized Debtors, or the GUC Trustee (in the case of General Unsecured Claims), as applicable.

The Debtors (with the consent of the Required Consenting Lenders), prior to the Effective Date, and the Reorganized Debtors after the Effective Date, may amend the Schedules with respect to any Claim (other than any Claim that otherwise is or becomes an Allowed Claim or is released hereunder or otherwise by a Final Order) and make distributions pursuant to the Plan based on such amended Schedules (if no Proof of Claim is timely filed in response to such amendment) without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or adversely changes the nature or priority of a Claim that was previously scheduled as undisputed, liquidated, and not contingent, the Debtors or the Reorganized Debtors, as applicable, shall provide the Holder of such Claim with notice of such amendment and the opportunity to file a Proof of Claim pursuant to the Claims Bar Date Order. For the avoidance of doubt, prior to the Claim Objection Deadline, the Debtors or Reorganized Debtors, as applicable, shall have the authority to object to or otherwise dispute any Claim that has been listed on the Schedules (other than any Claim that is otherwise an Allowed Claim), even if not listed as disputed, unliquidated and/or contingent.

## D.     Claims Subject to Avoidance Actions

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim held by a Person or an Entity against which a Debtor or a Reorganized Debtor pursues an Avoidance Action or an action to recover property under sections 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, in each case other than a Released Claim, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and the Holder of such Claim shall not receive any Distribution under the Plan on account of such Claim until such time as such action has been resolved and, to the extent applicable, all sums due from such Holder have been turned over to the Debtors or the Reorganized Debtors, as applicable. For the avoidance of doubt, the Claims Objection Deadline shall not apply to the filing of an Avoidance Action, including an Avoidance Action that seeks disallowance of a Claim as relief.

## E.     Objections to Claims

Except insofar as a Claim is Allowed under the Plan, the Debtors, the Reorganized Debtors, or the GUC Trustee (as it relates to General Unsecured Claims), as applicable, shall be entitled to object to Claims. After the Effective Date, (a) the Reorganized Debtors shall have and retain any

and all rights and defenses and (b) with respect to General Unsecured Claims, the GUC Trustee shall have any and all rights and defenses, that the Debtors had with regard to any Claim or Interest. Any objections to Claims shall be served and Filed on or before the later of (i) one (1) year after the Effective Date and (ii) such later date as may be fixed by the Bankruptcy Court and such objections shall be adjudicated by the Bankruptcy Court. The expiration of such period shall not limit or affect the rights of the Debtors, the Reorganized Debtors, or the GUC Trustee (in the case of General Unsecured Claims) to dispute Claims other than through an objection to a Claim or to Proof of such Claim.

If the Debtors or Reorganized Debtors dispute any Proof of Claim that is Filed on account of an Unimpaired Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, by the Bankruptcy Court.

**F.    Disallowance of Claims**

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors. All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Pursuant to the terms of the Plan and the Bar Date Order, if Proofs of Claim are not received by the Notice and Claims Agent on or before the Claims Bar Date or the Administrative Claims Bar Date, as applicable, and except in the case of certain exceptions explicitly set forth in the Plan and the Bar Date Order, the Holders of the underlying Claims shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases. The Debtors and the GUC Trustee (in the case of General Unsecured Claims) shall be authorized to update the Claims Register to remove any claims not received by the Notice and Claims Agent before the Claims Bar Date or the Administrative Claims Bar Date, as applicable, and not subject to an exception as set forth above.

**G.    No Distributions Pending Allowance**

If an objection, motion to estimate, or other challenge to a Claim is Filed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Disputed Claim becomes an Allowed Claim.

## H.     Distributions after Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, including the treatment provisions provided in Article IV.

# ARTICLE VIII
# EFFECT OF CONFIRMATION OF THE PLAN

## A.     Discharge of Claims and Termination of Interests

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.**

## B.     Release of Liens

**Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable Agents for such Holder shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any**

Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable Agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

## C.    Releases by Debtors

Except as expressly set forth in the Definitive Documents, as of the Effective Date, to the maximum extent permitted by Law, in exchange for good and valuable consideration, the receipt and adequacy of which is hereby confirmed, each Company Entity, Debtor, Estate, and Reorganized Debtor (in each case on behalf of themselves and their respective Related Parties who may purport to assert any Claims, obligations, rights, suits, damages, Causes of Action, remedies or liabilities) hereby conclusively, absolutely, unconditionally, irrevocably, and forever releases and discharges each and all of the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever (including any derivative claims, including those asserted or assertable on behalf of any Company Entity, Debtor, Estate, or Reorganized Debtor), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, direct or derivative, suspected or unsuspected, secured or unsecured, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that each Company Entity, Debtor, Estate, or Reorganized Debtor and/or its Related Parties or any other Entities claiming under or through them would have been legally entitled to assert in his/her or its own right (whether individually or collectively) or on behalf of any Entity, based on or relating to, or in any manner arising from, in whole or in part, the Company Entities, the Debtors, the Estates, or the Reorganized Debtors (including the capital structure, management, ownership or operation thereof), the Existing Credit Documents and the loans made thereunder, the purchase, sale, or rescission of the purchase or sale of any security of any Company Entity, Debtor, or Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest affected by the Restructuring, the business or contractual arrangements or interactions between any Company Entity, Debtor, or Reorganized Debtor and any other Person, the ownership and/or operation of the

Company Entities, Debtors, or Reorganized Debtors by any Released Party, the actions taken by the board of directors or managers of any Company Entity, Debtor, or Reorganized Debtor, or the distribution or transfer of any Cash or other property of the Company Entities, Debtors, or Reorganized Debtors to any Released Party, the Restructuring Transactions, the Restructuring Support Agreement (including the term sheet attached thereto), any Definitive Documents, the negotiation, formulation, preparation, or implementation thereof, the solicitation of consent or support with respect to the Restructuring, or any action or inaction relating to the payment or non-payment of any tax liabilities (or estimates thereof) of the Company Entities, the Debtors or the Reorganized Debtors, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than any rights that remain in effect from and after the Effective Date to enforce the Definitive Documents and the obligations contemplated by the Restructuring Transactions (the "**Debtor Release**").

D.    **Releases by Releasing Parties**

Except as expressly set forth in the Definitive Documents, as of the Effective Date, to the maximum extent permitted by law, in exchange for good and valuable consideration, the receipt and adequacy of which is hereby confirmed, each Releasing Party (in each case on behalf of themselves and their respective Related Parties who may purport to assert any Claims, obligations, rights, suits, damages, Causes of Action, remedies or liabilities) hereby conclusively, absolutely, unconditionally, irrevocably, and forever releases and discharges each and all of the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever (including any derivative claims, including those asserted or assertable on behalf of any Releasing Party), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, direct or derivative, suspected or unsuspected, secured or unsecured, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that each Releasing Party and/or its Related Parties or any other Entities claiming under or through them would have been legally entitled to assert in his/her or its own right (whether individually or collectively) or on behalf of any Entity, based on or relating to, or in any manner arising from, in whole or in part, the Company Entities, the Debtors, the Estates, or the Reorganized Debtors (including the capital structure, management, ownership or operation thereof), the Existing Credit Documents and the loans made thereunder, the purchase, sale, or rescission of the purchase or sale of any security of any Company Entity, Debtor, or Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest affected by the Restructuring, the business or contractual arrangements or interactions between any Company Entity, Debtor, or Reorganized Debtor and any other Person, the ownership and/or operation of the Company Entities, Debtors, or Reorganized Debtors by any Released Party, the actions taken by the board of directors or managers of any Company Entity, Debtors or Reorganized Debtor, or the distribution or transfer of any Cash or other property of the Company Entities, Debtors, or Reorganized Debtors to any Released Party, the Restructuring Transactions, the Restructuring Support Agreement (including the term sheet attached thereto), any Definitive Documents, the negotiation, formulation, preparation, or

implementation thereof, the solicitation of consent or support with respect to the Restructuring, or any action or inaction relating to the payment or non-payment of any tax liabilities (or estimates thereof) of the Company Entities, the Debtors or the Reorganized Debtors, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than (a) Causes of Action assertable by a Releasing Party against a Released Party arising from any act or omission of such Released Party that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud (other than fraud claims based on constructive fraud, negligence, recklessness or other similar theory not predicated on intent, knowledge or willfulness) or gross negligence, (b) any indemnification or contribution claims of the Agents against any lender specifically provided for under the terms of the Existing Credit Documents or any instructions or directions given in connection therewith, and any related defense (legal or equitable) of any lender against any of the Agents and (c) any rights that remain in effect from and after the Effective Date to enforce the Definitive Documents and the obligations contemplated by the Restructuring Transactions (the "<u>Third-Party Release</u>", and together with the Debtor Release, the "<u>Releases</u>").

Notwithstanding anything herein to the contrary, nothing contained in this Article VIII.D shall constitute a release or waiver of any Claim or Cause of Action held by an individual member of the Committee (in its individual capacity) against any Person or Entity (except to the extent that such Committee member elected not to opt out (or, in accordance with clause (vii) of the definition of "Releasing Party", was deemed hereunder not to opt out) of the releases contained in Article VIII.D. of the Plan), and any such Claim and Cause of Action is hereby expressly preserved.

E.     <u>Exculpation</u>

As of the Effective Date, and without affecting or limiting the Releases, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, all Claims, obligations, rights, suits, damages, Causes of Action, remedies or liabilities for any act or omission in connection with, relating to, or arising out of, the formulation, preparation, dissemination, negotiation, filing or consummation of the Restructuring Transactions, the Restructuring Support Agreement (including the term sheet attached thereto), any Definitive Document or any transaction, contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the consummation of the transactions contemplated by any of the foregoing, including the issuance of Securities pursuant to the Plan or Confirmation Order, or the distribution of property under the Plan or Confirmation Order or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or Confirmation Order) in each case, to the fullest extent permitted by applicable Law; provided that this provision shall not release or exculpate any Exculpated Party from any (a) Causes of Action assertable by an Exculpated Party against another Exculpated Party arising from any act or omission of such Exculpated Party that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud (other than fraud claims based on constructive fraud, negligence, recklessness or other similar theory not predicated on intent, knowledge or willfulness) or

gross negligence, (b) rights that remain in effect from and after the Effective Date to enforce the Definitive Documents, including the Restructuring Support Agreement, and the obligations contemplated thereunder, or (c) breach of such Exculpated Party's obligations under any Definitive Document.

Nothing in this provision shall or shall be deemed to result in the waiving or limiting by any Company Entity, Debtor, or Reorganized Debtor or any of their respective directors, officers, members, managers, employees, or consultants of (a) any indemnification rights against any Company Entity, Debtor, or Reorganized Debtor or any insurance provider to any Company Entity, Debtor, or Reorganized Debtor, (b) any rights as beneficiaries of any insurance policies, (c) wages, salaries, compensation, or benefits, or (d) Intercompany Claims.

F.     **Injunction**

Upon entry of the Confirmation Order, all Persons and Entities shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan or the vesting of the Estates' assets in, and the enjoyment of such assets by, the Reorganized Debtors pursuant to this Plan.

Except as otherwise specifically provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold claims or interests that have been released or discharged hereby, or are subject to exculpation hereunder are permanently enjoined, from and after the Effective Date, from taking any of the following actions (collectively, the "Covered Matters") against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties (collectively, the "Covered Entities"): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Persons and Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons and Entities or against the property of such Persons and Entities on account of or in connection with or with respect to any such claims or interests unless such Persons or Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Persons or Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

With respect to any Covered Entity, no Entity or Person may commence or continue any action, employ any process, or take any other act to pursue, collect, recover or offset any Claim, Interest, debt, obligation, or Cause of Action relating or reasonably likely to relate to

**any act or commission in connection with, relating to, or arising out of a Covered Matter (including one that alleges the actual fraud, gross negligence, or willful misconduct of a Covered Entity), unless expressly authorized by the Bankruptcy Court after (1) it determines, after a notice and a hearing, such Claim, Interest, debt, obligation, or Cause of Action is colorable and (2) it specifically authorizes such Entity or Person to bring such Claim or Cause of Action. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether any such Claim, Interest, debt, obligation or Cause of Action is colorable and, only to the extent legally permissible and as provided for in <u>Article XI</u>, shall have jurisdiction to adjudicate such underlying colorable Claim, Interest, debt, obligation, or Cause of Action.**

**ARTICLE IX**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.      <u>Conditions Precedent to the Effective Date</u>**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied, in a manner reasonably acceptable to each of the Debtors, and the Required Consenting Lenders, or waived pursuant to <u>Article IX.B</u>:

1.      the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

2.      the Bankruptcy Court shall have entered the Disclosure Statement Order, which order shall be a Final Order;

3.      (a) the Bankruptcy Court shall have entered the Confirmation Order, which order shall be a Final Order, and (b) the Confirmation Order shall have authorized and approved (in form and substance reasonably acceptable to the Committee) the GUC Settlement, the establishment of the GUC Trust, the appointment of the GUC Trustee, the execution and delivery of the GUC Trust Documents and the transfer and assignment of the GUC Trust Assets to the GUC Trust on the Effective Date in accordance with the Plan and the GUC Trust Documents;

4.      the New Revolving Facility shall have been entered into by BidCo and the lenders thereto;

5.      all Definitive Documents necessary to consummate the Restructuring Transactions shall have been executed by the parties thereto consistent with their respective consent rights under the Restructuring Support Agreement and shall not have been terminated and shall remain in full force and effect;

6.      all conditions precedent to the effectiveness of the Definitive Documents necessary to consummate the Restructuring shall have been satisfied or duly waived in writing in accordance with the terms of such Definitive Documents;

7.      the Debtors shall have paid all Restructuring Expenses;

70

8.      all governmental and third-party approvals and consents that may be necessary in connection with the Restructuring shall have been obtained by the Company Entities, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such Restructuring;

9.      the Professional Fee Escrow shall have been established and funded as provided herein;

10.      BidCo shall have at least $150 million of Liquidity immediately following the Credit Bid Transaction Closing;

11.      the Bankruptcy Court shall have entered the Sale Order, which order shall be a Final Order;

12.      the Credit Bid Transaction Closing shall have occurred or occur concurrently with the Effective Date; *provided* that, absent further Bankruptcy Court authority, the Credit Bid Transaction Closing may not occur unless the Effective Date is occurring concurrently; *provided*, further that if the Credit Bid Transaction Closing has not occurred by November 10, 2025 the Ad Hoc Group shall be entitled to seek an emergency hearing with the Bankruptcy Court, on at least five (5) business days' notice to the Debtors and the Committee, to seek authority to effectuate the Credit Bid Transaction Closing independently from the Effective Date and the rights of all parties, including the Debtors and the Committee, to oppose such relief are expressly preserved (*provided* that the Debtors and the Committee shall not contest the seeking of such hearing on an emergency basis), and all rights of the Ad Hoc Group are expressly preserved;

13.      (a) the GUC Trustee shall have been appointed, (b) the GUC Trust Documents (in form and substance acceptable to the Committee and reasonably acceptable to the Debtors and the Required Consenting Lenders) shall have been executed and delivered by the parties thereto and shall be in full force and effect, (c) the GUC Trust shall have been formed, and (d) the GUC Trust Assets, including the GUC Cash Pool and the GUC Commercial Tort Claim Share, shall have been transferred and assigned to the GUC Trust, free and clear of all Liens, Claims and encumbrances; and

14.      the Wind-Down Reserve (including the Wind-Down Budget) shall be in form, substance and amount acceptable to the Debtors and the Ad Hoc Group and reasonably acceptable to the Committee, and the Wind-Down Reserve shall have been fully funded.

**B.**      **Waiver of Conditions Precedent**

The Debtors, with the prior written consent (which may be provided through electronic mail) of the Required Consenting Lenders, may waive any of the conditions to the Effective Date set forth in <u>Article IX.A</u> at any time or as otherwise provided in the Restructuring Support

Agreement without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan; *provided*, that any waiver of the conditions precedent contained in clauses 3(b), 9 (solely as it relates to Committee professionals), 12, 13 and 14 in Article IX.A. hereof shall also require the prior written consent (which may include email from counsel) of the Committee. The failure of the Debtors or Reorganized Debtors, as applicable, the Required Consenting Lenders, or the Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.    <u>Modification of Plan</u>

Subject to the limitations and terms contained in the Plan, the Debtors reserve the right to (1) amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein (including the consent rights set forth in the Restructuring Support Agreement), in accordance with the Bankruptcy Code and the Bankruptcy Rules; (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, subject to the Restructuring Support Agreement, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein, in each case set forth in the preceding clauses (1) and (2) with the prior written consent (which may be provided through electronic mail) of the Required Consenting Lenders; and (3) at any time, notwithstanding anything contained herein, the prior written consent (which may include email from counsel) of the Committee shall be required for (A) any amendment, modification, supplement or waiver to any provision of the Plan or definitive document directly related to (i) the GUC Settlement, (ii) the treatment of Class 6 (General Unsecured Claims), the GUC Cash Pool or the GUC Commercial Tort Share, (iii) the GUC Trust Documents, (iv) the releases and exculpation provisions contained in the Plan, or (v) the rights and duties of the GUC Trustee, and (B) any amendment, modification, supplement or waiver to the Plan or definitive document that would adversely affect the GUC Settlement, the rights of the Committee or Holders of General Unsecured Claims (in the case of this clause (B), such consent not to be unreasonably withheld).  The Debtors must give counsel to the Ad Hoc Group and the Committee at least five (5) Business Days' advance notice, or otherwise as much notice as is reasonably practicable, prior to withdrawing the Plan.

### B.    <u>Effect of Confirmation on Modifications</u>

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    **Withdrawal of Plan**

The Debtors reserve the right, subject to the terms of the Restructuring Support Agreement and the approval rights of the parties set forth therein, to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant hereto shall be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Liens,  Interests, or Causes of Action by any Entity, (b) prejudice in any manner the rights of any Debtor or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Person or Entity; *provided,* however, that all provisions of the Restructuring Support Agreement that survive the termination of these agreements (each, according to its terms) shall remain in effect in accordance with the terms thereof.

# ARTICLE XI
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, which shall be exclusive jurisdiction within the territorial jurisdiction of the United States, including jurisdiction to:

1.    subject to Article VII.A, allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claim arising therefrom, including Cure Amounts payable pursuant to section 365 of the Bankruptcy Code, and enforce any obligation to pay Cure Amounts; and (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.   ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

5.   adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.   enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Combined Order, and contracts, instruments, releases, indentures, and other agreements or documents created under or in connection with the Plan;

7.   enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.   adjudicate any dispute related to the GUC Trust, including to seek an accounting of the GUC Commercial Tort Claim Share and enforce the allocation of such proceeds into the GUC Trust.

9.   grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

10.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan (including the Releases and Exculpation thereunder).

11.  hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI; (b) with respect to the Releases, Exculpation, injunctions, and other provisions contained in Article VIII, including entry of such orders as may be necessary or appropriate to implement such Releases, Exculpation, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan and the Combined Order; or (d) related to section 1141 of the Bankruptcy Code;

12.  enter and implement such orders as are necessary or appropriate if the Combined Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Combined Order;

14.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

16.     enforce all orders previously entered by the Bankruptcy Court; and

17.     hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code.

*provided*, in each case, that the Bankruptcy Court shall not retain jurisdiction over matters arising from agreements or documents (or performance under agreements or documents) contained in the Plan Supplement or any Definitive Documents, in each case, that have a jurisdictional, forum selection, or dispute resolution clause that refers matters to or permits a Person to bring actions before a different court or forum, and any matters arising from agreements or documents (or performance under any agreements or documents) contained in the Plan Supplement or any other Definitive Documents that contain such clauses shall be governed in accordance with the provisions of such agreements or documents; *provided, further*, that the Bankruptcy Court retains exclusive jurisdiction to enforce any disputes related to, or the enforcement of the payment of, Cure Amounts; *provided, further,* that if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this <u>Article XI</u> shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### A.     <u>Immediate Binding Effect</u>

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

### B.     <u>Additional Documents</u>

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan; *provided, however*, that such agreements and other documents shall be consistent in all material respects with the terms and conditions of the Restructuring Support Agreement, including the condition that such agreements and other

documents shall be in form and substance reasonably acceptable to the Required Consenting Lenders. The Debtors, the Reorganized Debtors or the GUC Trustee, as applicable, and all Holders of Claims and Interests receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be reasonably necessary to effectuate the provisions and intent of the Plan.

**C.      Statutory Committee and Cessation of Fee and Expense Payment.**

On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date; *provided that* following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation by professional persons retained in the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code; and (b) any appeals of the Confirmation Order.

**D.      Payment of Statutory Fees**

Prior to the Effective Date, the Debtors shall pay all fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) and shall File monthly reports in a form reasonably acceptable to the U.S. Trustee. On or after the Effective Date, the Reorganized Debtors shall pay any and all fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Reorganized Debtor shall remain obligated to pay all fees to the U.S. Trustee until the applicable Debtor's Chapter 11 Case is closed.

**E.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, including the amounts set forth in Article III.B, or the taking of any action by any Debtor or any party in interest with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any party in interest prior to the Effective Date.

**F.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

**G.      Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **LifeScan**<br>75 Valley Stream Parkway<br>Malvern, Pennsylvania 19355<br>Attention: Valerie Asbury (VAsbury@lifescan.com); James Rushing (JRushing@lifescan.com); Gary Broadbent (GBroadbent@lifescan.com) |
| **Counsel to Debtors** | **Porter Hedges LLP**<br>1000 Main St., 36th Floor<br>Houston, Texas 77002<br>Attention: John F. Higgins (jhiggins@porterhedges.com)<br>M. Shane Johnson (sjohnson@porterhedges.com)<br>Megan Young-John (myoung-john@porterhedges.com)<br>James A. Keefe (jkeefe@porterhedges.com)<br>Grecia V. Sarda (gsarda@porterhedges.com)<br><br>-and –<br><br>**Milbank LLP**<br>55 Hudson Yards<br>New York, New York 10001<br>Attention: Dennis F. Dunne (ddunne@milbank.com);<br>Samuel Khalil (skhalil@milbank.com);<br>Jaimie Fedell (jfedell@milbank.com) |
| **Counsel to the Ad Hoc Group** | |
| | **Davis Polk & Wardwell LLP**<br>450 Lexington Avenue<br>New York, New York 10017<br>Attention: Damian Schaible<br>(damian.schaible@davispolk.com); Michael Pera<br>(michael.pera@davispolk.com); Ethan Stern<br>(ethan.stern@davispolk.com)<br><br>-and-<br><br>**Norton Rose Fulbright US LLP**<br>1550 Lamar Street, Suite 2000<br>Houston, Texas 77010<br>Attention: Bob Bruner<br>(bob.bruner@nortonrosefulbright.com); Jason Boland,<br>(jason.boland@nortonrosefulbright.com); Julie Harrison<br>(Julie.harrison@nortonrosefulbright.com) |

| United States Trustee | **Office of the United States Trustee for the Southern District of Texas** |
|---|---|
| | 515 Rusk Street, Suite 3516 |
| | Houston, Texas 77002 |
| | Attention: Ha Nguyen (ha.nguyen@usdoj.gov); Ross Travis (c.ross.travis@usdoj.gov); Alina Samko-Yu (alina.samko-yu@usdoj.gov) |

**H.   Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**I.   Entire Agreement**

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**J.   Plan Supplement**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the Plan Supplement is Filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://dm.epiq11.com/LifeScan or the Bankruptcy Court's website at http://ecf.txsb.uscourts.gov/. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control. The Debtors shall have the right subject to the consent rights set forth in the Restructuring Support Agreement, to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date.

**K.   Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided that* any such alteration or interpretation shall be consistent with the

78

Restructuring Support Agreement and in form and substance reasonably satisfactory to the Required Consenting Lenders. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (3) nonseverable and mutually dependent.

**L.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors, the Consenting Lenders, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and pursuant to section 1125(e) of the Bankruptcy Code, and participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered, issued, or sold under the Plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered, issued, or sold under the Plan.

**M.      Closing of Chapter 11 Cases**

After an Estate has been fully administered, the Reorganized Debtors shall be authorized, but not directed, to submit an order to the Bankruptcy Court under certification of counsel to close the applicable Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules. Furthermore, the Claims and Noticing Agent is authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.

**N.      Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring Term Sheet, the Plan Supplement, or other papers Filed prior to the Confirmation Date.

**O.      2002 Notice Parties**

The Confirmation Order shall provide that, after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Confirmation Hearing to receive documents pursuant to Bankruptcy Rule 2002.

[*Remainder of page left intentionally blank*]

Dated:  October 20, 2025

Respectfully submitted,

By:      <u>  /s/ *Valerie Asbury*</u>
Name: Valerie Asbury
Title:   President and Chief Executive Officer
LifeScan Global Corporation


On behalf of LifeScan Global Corporation and its Debtor affiliates